# EXHIBIT A

CHRIS DEROSE
Clerk of the Superior Court
By Denise Hill, Deputy
Date 10/23/2018 Time 11:12:56

| Description | Amount |
| --- | --- |
| CASE# CV2018-096795 | |
| CIVIL NEW COMPLAINT | 333.00 |
| TOTAL AMOUNT | 333.00 |
| Receipt# 26864096 | |

1    Brad A. Denton, #016454
    Brad@DentonPeterson.com

2    Sterling R. Peterson, #020628
    Sterling@DentonPeterson.com

3



**DP | DENTON PETERSON, PC**
ATTORNEYS & COUNSELORS AT LAW

4

5    1930 N. ARBOLEDA ROAD, SUITE 200
    MESA, ARIZONA 85213

6    TELEPHONE: (480) 325-9900
    FACSIMILE: (480) 325-9901
    HTTPS://ARIZONABUSINESSLAWYERAZ.COM

7    *Attorneys for Plaintiffs*

8    **IN THE SUPERIOR COURT OF THE STASTE OF ARIZONA**

9    **IN AND FOR THE COUNTY OF MARICOPA**

10   RIGHT AT HOME GLASS, LLC, a foreign

11   entity registered to do business in Arizona,    Case No. CV2018-096795

12       Plaintiffs,

13   v.    **COMPLAINT**

14   SAFECO INSURANCE COMPANY OF    *(Breach of Contract, Breach of the Duty of*

15   AMERICA, a foreign insurance company;    *Good Faith and Fair Dealing, Unjust*

    and JOHN AND JANE DOES I-X, XYZ    *Enrichment)*

16   ENTITIES I-V,

17

18       Defendant.

19

20       Plaintiff RIGHT AT HOME GLASS, a foreign entity registered to do business in

21   Arizona ("Right at Home"), by and through undersigned counsel, for their Complaint against

22   Defendant, alleges as follows:

23           **PARTIES; JURISDICTION; VENUE**

24

25       1.    Plaintiff is, and was at all material times relevant hereto, a foreign entity that

26   was (and is) registered through the Arizona Corporation Commission to conduct business in

27   the State of Arizona.

28

1

2.      Upon information and belief, Safeco Insurance Company of America is, and was at all material times relevant hereto, a foreign insurance company registered to conduct the business of insurance in Arizona through Arizona's Department of Insurance.

3.      All of the named Defendants herein, whether identified or designated as John Doe or Jane Doe, are intended to represent individuals acting either in their individual capacities, or as agents, representatives, directors, shareholders, or employees duly authorized and acting within their employment with regards to the transactions hereinafter alleged. Where applicable, each of the named individual Defendants alleged herein was acting for and on behalf of the marital communities composed of themselves and their spouse, and the designations John Doe and Jane Doe as used herein are used for the purposes of identifying the unknown spouses of the named Defendants.  Leave of Court is requested to substitute the true names as they are learned.

4.      All acts of the Defendants herein alleged to have been done by the individually named defendant companies, corporations, partnerships and other business entities named herein were done by their duly authorized agents, directors, shareholders or employees acting within the scope of their employment or agency, and all acts herein alleged were agreed to and ratified by the individually named defendant companies, corporations, partnerships and other business entities alleged herein.  Each of the individually named defendant companies, corporations, partnerships and other business entities alleged herein, whether identified or not, were in fact doing business in Maricopa County, Arizona, and caused events to occur and/or entered into contracts and agreements in the state of Arizona with the named Plaintiff.

DP | DENTON PETERSON, PC
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

5.      In the event that the individually named defendant companies, corporations, partnerships and other business entities alleged herein were not duly authorized and legally constituted business entities, all actions taken on behalf of said defendant organizations were done for and on behalf of the principals of said defendant organizations, which principals are either identified herein or designated John and Jane Does I-X and which corporations or companies, if unknown at this time, are designated XYZ Entities.  Leave is requested of the Court to add individually named companies, corporations, partnerships and other business entities and additional named Defendants as they are learned.

6.      The acts, omissions, representations, understandings, agreements, and contracts hereinafter alleged were either done by, agreed to or ratified by all Defendants herein, whether named or unnamed, and all Defendants benefited either directly or indirectly from the acts, omissions, representations, understandings, agreements and contracts hereinafter alleged. As a result of the benefit derived and the agreement to or ratification of the acts, omissions, representations, understandings, agreements and contracts, Defendants are jointly and severally liable to Plaintiff for the acts, omissions, representations, understandings, agreements, and contracts alleged herein.

7.      Each and every named and unnamed Defendant and business entity caused actions to occur within the state of Arizona sufficient to confer upon the courts of the state of Arizona jurisdiction over the persons and business entities herein alleged.

8.      Jurisdiction and venue are proper in this Court.

**GENERAL BACKGROUND**

9.      Plaintiff is engaged in the auto glass replacement and installation business.

DENTON PETERSON, PC
1930 N. Arboleda Road, Suite 200
Mesa, AZ 85213

10.     When the owner of an automobile has glass coverage on his or her automobile insurance policy (i.e., the "Contract" between the Defendants and the insured) and is in need of having glass replaced on his or her vehicle, the owner of the vehicle may assign its claim to proceeds for reimbursement from his or her insurance company for the replacement and installation of the new glass to the Plaintiff in exchange for Plaintiff performing the services and replacement and installation of the new glass.

11.     In other words, Plaintiff will replace and install new glass on the insured's vehicle, and, in exchange for that service, the insured will assign to the Plaintiff his or her right to collect the insurance proceeds from his or her insurance company.

12.     With that assignment for reimbursement, Plaintiff then sends an invoice to the vehicle owner's insurance carrier for reimbursement of the fees.

13.     The vehicle owner's insurance carrier then sends a check to Plaintiff to pay for the replacement glass and installation services it performed on the insured's automobile.

14.     Plaintiff is an assignee of the insured's contractual claim for reimbursement for the proceeds for the replacement and installation of the glass.

## DEFENDANT'S FAILURE TO PAY

15.     From October 31, 2017 through April 30, 2018, Plaintiff replaced and installed glass for 60 people who had insurance through Defendant Safeco.  [See *Exhibit A* attached hereto with spreadsheet containing information regarding each claim].

16.     Plaintiff procured an assignment of claims from each of the 60 insureds for the replacement and installation of the glass.

DENTON PETERSON, PC
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

4

17.    Plaintiff submitted invoices to Defendant for reimbursement for the replacement and installation of the glass.

18.    Defendant paid a portion of each of the 60 invoices, but failed to pay the full amount.

19.    Specifically, the 60 invoices Plaintiff sent to Defendant Safeco totaled $50,015.55 for the replacement and installation of glass on each of the automobiles. However, Defendant Safeco only paid a total of $21,487.92.   Thus, Safeco still owes Plaintiff an outstanding balance of $28,527.13 on the invoices.   [See *Exhibit A*].

20.    Plaintiff is the assignee of the claims of the 60 insureds against their respective Defendant insurance company, and, as a result, Plaintiff steps into the shoes of Defendant's insureds and is entitled to all of the insured's rights under the contract as it relates to the replacement and installation of the glass.

21.    Defendant owes a collective outstanding balance of $28,527.13 to Plaintiff for the unpaid amounts owed on the invoices for the 60 assigned claims.

22.    Despite Plaintiff's best efforts to collect the outstanding balance, Defendant has refused to pay the remaining balance on the claims.

23.    Plaintiff has been damaged as a result of Defendant's refusal to pay the amounts it owes to Plaintiff.

24.    The conduct of Defendant constitutes a breach of its obligations to Plaintiff as an assignee of the insured's claims.

DENTON PETERSON, PC
1930 N. Arboleda Road, Suite 200
Mesa, AZ 85213

## CLAIMS FOR RELIEF

### COUNT ONE
#### (Breach of Contract)

25.     Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

26.     Plaintiff is an assignee of the insured's claims against Defendant as it relates to the claims for replacement and installation of glass on the insured's automobiles.

27.     As a result, Plaintiff steps into the shoes of the insureds and is entitled to all of the rights and benefits of the insured under their contract with the Defendant.

28.     Defendant's failure to pay the outstanding balance on the invoices constitutes a breach of their contractual obligations to Plaintiff as an assignee under the contract.

29.     Plaintiff suffered damages as a result of Defendant's breach in the amount of not less than $28,527.13 for Defendant's failure to remit payments in accordance with the invoices, plus damages for all fees and costs incurred for instituting this action and other direct and consequential damages, in amounts to be proven at trial.

30.     This action arises out of contract, and therefore, pursuant to A.R.S. § 12-341.01 and pursuant to the parties' Agreement, Plaintiff is entitled to recover its reasonable attorneys' fees and costs incurred as a result of Defendant's failure to pay the amounts due to Plaintiff.

### COUNT TWO
#### (Breach of Duty of Good Faith and Fair Dealing)

5.     Plaintiff incorporates by this reference the previous allegations.

6.     Defendant had a duty of good faith and fair dealing in this transaction with Plaintiff because Plaintiff stepped into the shoes of the insureds as assignee under the contract

DENTON PETERSON, PC
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

1  between the insured and Defendant and Plaintiff is entitled to the insured's right to be dealt

2  with fairly in its contract with Defendant.

3

4      7.      Defendant knew or should have known that its conduct (i.e., of failing to pay

5  the Plaintiff the full amount in the invoices) was inexcusable and did not comport with the

6  standards of good faith and fair dealing.

7      8.      Plaintiff has been damaged as a direct and proximate result of Defendant's

8  breach of the duty of good faith and fair dealing which damages include, but are not limited

9  to, not less than $28,527.13 for Defendant's failure to remit payments in accordance with the

10  invoices, plus damages for all fees and costs incurred for instituting this action and other

11  direct and consequential damages, in amounts to be proven at trial.

12

13      9.      This matter arises out of contract, and Plaintiff is entitled to its attorneys' fees

14  and costs of suit pursuant to the provisions of A.R.S. §12-341, *et seq*.

15

16                          **COUNT THREE**
                            *(Unjust Enrichment)*

17

18      10.     Plaintiff incorporates by this reference the previous allegations.

19

20      11.     Defendant has been unjustly enriched, and Plaintiff unjustly impoverished, to

21  the extent that Defendant has received valuable consideration from Plaintiff for the value of

22  the replacement and installation of the glass which Defendant agreed to, but did not, pay in

23  accordance with the terms of the contract.

24

25      12.     Plaintiff suffered damages as a result of this unjust enrichment in an amount to

26  be proven at trial, but not less than the jurisdictional minimum in this Court.

27

28

DENTON PETERSON, PC
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

## PRAYER FOR RELIEF

THEREFORE, Plaintiff prays the Court enter judgment against Defendant as follows:

A.      For compensatory, incidental, and consequential damages in an amount to be proven at trial, but not less than the amounts described above;

B.      For Plaintiff's reasonable attorneys' fees and costs herein and, in the event judgment is obtained by default, for reasonable attorneys' fees in the amount of $5,000.00;

C.      For interest at the highest rate allowed by law from the earliest time permitted by law until the judgment is paid in full; and,

D.      For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 22 day of October, 2018.

DENTON PETERSON, P.C.

Brad A. Denton
Sterling R. Peterson
1930 N. Arboleda Road, Suite 200
Mesa, AZ  85213
*Attorneys for Plaintiff*

DENTON PETERSON, PC
1930 N. Arboleda Road, Suite 200
Mesa, AZ 85213

# Exhibit A

| | A | B | C | D | E | F | G | H | I | J | K | L | M | N | O | P | Q | R | S | T | U | V | W |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Inv # | Shop | State | Handler/file | Name | Year | Make | Model | VIN | Policy | Claim | Insured | Date | Sub Total | Tax Total | Total | Amount Paid | Amount Owed | | Claim | SENT TO APP | DATE | NOTES |
| 2 | [illegible] | RAHG | AZ | DL/183017 | SAFECO-REPL | 2007 | Ford | F Series | 1FTRX12V87KA47132 | Y8652729 | 637581 | FRANCISCO MEDINA | 04/20/2018 | $ 1,037.74 | $ 65.17 | $ 1,102.91 | $ 439.47 | $ 663.44 | 39.85% | 304311432 | YES | 6/7/2018 | 6/7/18 SEND TO APPRAISER CL |
| 3 | [illegible] | RAHG | AZ | AM/183288 | SAFECO-REPL | 2004 | Honda | CR-V | JHLRD78814C037567 | X3872807 | 571785 | SHERRY ALEXANDER | 4/25/2018 | $ 550.53 | $ 27.57 | $ 578.10 | $ 249.73 | $ 328.37 | 43.20% | 304311432 | YES | 5/23/2018 | 5/23/18 SEND TO APPRAISER CL |
| 4 | 5548852 | RAHG | AZ | AM/183280 | SAFECO-REPL | 1993 | Chevrolet | Pickup | 1GCGC29F9PE174722 | Y8169194 | 484583 | JANICE AMWAY | 4/24/2018 | $ 508.05 | $ 24.77 | $ 532.82 | $ 218.39 | $ 314.43 | 40.99% | [illegible] | YES | 5/23/2018 | 5/23/18 SEND TO APPRAISER CL |
| 5 | 5543758 | RAHG | AZ | AM/183257 | SAFECO-REPL | 1998 | Dodge | Pickup | 3B7HC12Z2WG208818 | Y8588847 | 438587 | DAVID FLORIO | 4/17/2018 | $ 555.12 | $ 29.88 | $ 584.80 | $ 257.36 | $ 327.44 | 44.01% | [illegible] | YES | 5/10/2018 | 5/10/18 SEND TO APPRAISER CL |
| 6 | 5542160 | RAHG | AZ | 105/550738 | SAFECO-REPL | 2011 | Hyundai | Sonata | 5NPEC4AC5BH255307 | Y7878364 | 358158 | BRENDA MASSINO | 4/17/2018 | $ 885.06 | $ 46.88 | $ 931.94 | $ 380.18 | $ 551.76 | 40.79% | [illegible] | YES | 5/10/2018 | 5/10/18 SEND TO APPRAISER CL |
| 7 | 5538502 | RAHG | AZ | ML/550544 | SAFECO-REPL | 2015 | Ford | Escape | 1FMCU0GX2FUA06073 | Y7818140 | 331380 | Barbara Gote | 4/16/2018 | $ 100.00 | $ - | $ 100.00 | $ 60.00 | $ 40.00 | 60.00% | [illegible] | YES | 6/18/2018 | 6/18/18 SEND TO APPRAISER CL |
| 8 | 5531126 | RAHG | AZ | ML/558534 | SAFECO-REPL | 2010 | Dodge | Pickup | [illegible] | Y8573402 | 281479 | AMY MCFADDEN | 4/11/2018 | $ 1,149.59 | $ 69.62 | $ 1,219.21 | $ 474.06 | $ 745.15 | 38.88% | 304287807 | YES | 5/10/2018 | 5/10/18 SEND TO APPRAISER CL |
| 9 | 5513301 | RAHG | AZ | ML/558535 | SAFECO-REPL | 2012 | Chevrolet | Equinox | [illegible] | POLICY | 281528 | AMY MCFADDEN | 4/10/2018 | $ 1,434.02 | $ 96.47 | $ 1,530.49 | $ 605.76 | $ 924.73 | 39.58% | 304287807 | YES | 5/10/2018 | 5/10/18 SEND TO APPRAISER CL |
| 10 | 5530275 | RAHG | AZ | ML/339099 | SAFECO-REPL | 2013 | Toyota | RAV4 | [illegible] | Y8384065 | 203083 | JOSE BETEMIT | 4/9/2018 | $ 604.08 | $ 35.00 | $ 639.08 | $ 333.08 | $ 310.60 | 38.47% | 304287807 | YES | 5/10/2018 | 5/10/18 SEND TO APPRAISER CL |
| 11 | 5328270 | RAHG | AZ | ML/530700 | SAFECO-REPL | 2003 | Toyota | Sienna | [illegible] | Y8384065 | 204751 | JOSE BETEMIT | 4/9/2018 | $ 687.01 | $ 32.42 | $ 719.43 | $ 305.43 | $ 414.00 | 42.45% | 304287807 | YES | 5/10/2018 | 5/10/18 SEND TO APPRAISER CL |
| 12 | 5513220 | RAHG | AZ | AM/183208 | SAFECO-REPL | 2008 | Toyota | Tundra Pickup | [illegible] | Y8578380 | 632865 | ALBERTO SUAREZ | 3/28/2018 | $ 734.33 | $ 30.48 | $ 764.88 | $ 347.21 | $ 417.47 | 45.41% | [illegible] | YES | 4/30/2018 | 4/30/18 SEND TO APPRAISER CL |
| 13 | 5513232 | RAHG | AZ | AM/183051 | SAFECO-REPL | 2011 | Hyundai | Sonata | [illegible] | Y8784010 | | VICTORIA LOPEZ | 3/23/2018 | $ 845.44 | $ 43.47 | $ 888.91 | $ 379.63 | $ 509.28 | 42.71% | [illegible] | YES | 4/24/2018 | 4/24/18 SEND TO APPRAISER CL |
| 14 | 5513235 | RAHG | AZ | AM/183808 | SAFECO-REPL | 2012 | Mazda | 3 | [illegible] | Y8844010 | | VICTORIA LOPEZ | 3/23/2018 | $ 882.50 | $ 45.83 | $ 928.33 | $ 385.06 | $ 543.27 | 41.48% | [illegible] | YES | 4/24/2018 | 4/24/18 SEND TO APPRAISER CL |
| 15 | 5513226 | RAHG | AZ | AM/183800 | SAFECO-REPL | 2015 | Toyota | Sienna | [illegible] | X3889521 | | LORETTA CRAIN | 3/23/2018 | $ 961.38 | $ 51.72 | $ 1,013.10 | $ 441.17 | $ 571.73 | 43.57% | [illegible] | YES | 4/24/2018 | 4/24/18 SEND TO APPRAISER CL |
| 16 | [illegible] | RAHG | AZ | DG/183715 | SAFECO-REPL | 2017 | Ford | Escape | [illegible] | Y7731950 | 780002 | DIANE WALDEN | 3/19/2018 | $ 1,053.70 | $ 58.80 | $ 1,112.50 | $ 461.72 | $ 650.78 | 41.50% | [illegible] | YES | 5/10/2018 | 5/10/18 SEND TO APPRAISER CL |
| 17 | 5465221 | RAHG | AZ | ML/558876 | SAFECO-REPL | 2014 | GMC | Sierra | [illegible] | Y8040201 | 677170 | DANIEL KREUGER | 3/16/2018 | $ 1,107.00 | $ 53.82 | $ 1,160.82 | $ 644.15 | $ 516.77 | 55.49% | [illegible] | YES | 5/10/2018 | 5/10/18 SEND TO APPRAISER CL |
| 18 | 5463280 | RAHG | AZ | AM/557617 | SAFECO-REPL | 2013 | Toyota | Tacoma Pickup | [illegible] | Y8547050 | 491610 | RICHARD WILLIAMS | 3/5/2018 | $ 784.88 | $ 34.60 | $ 819.48 | $ 367.83 | $ 451.65 | 44.88% | [illegible] | YES | 4/5/2018 | 4/5/18 SEND TO APPRAISER CL |
| 19 | 5460401 | RAHG | AZ | DG/182862 | SAFECO-REPL | 2002 | GMC | Sierra | [illegible] | Y7802105 | 564583 | NANCY/DOUGLAS CARPI | 3/5/2018 | $ 479.88 | $ 22.33 | $ 502.01 | $ 214.13 | $ 287.88 | 42.65% | [illegible] | YES | 4/5/2018 | 4/5/18 SEND TO APPRAISER CL |
| 20 | 5474878 | RAHG | AZ | DL/557836 | SAFECO-REPL | 2009 | Nissan | Sentra | [illegible] | [illegible] | 372781 | STEVEN MARBLE | 3/27/2018 | $ 762.13 | $ 36.81 | $ 800.94 | $ 340.51 | $ 459.53 | 42.58% | 304274045 | YES | 4/17/2018 | 4/17/18 SEND TO APPRAISER CL |
| 21 | 5472245 | RAHG | AZ | DL/559957 | SAFECO-REPL | 2015 | Toyota | Tacoma Pickup | [illegible] | [illegible] | [illegible] | GREG SAND | 2/13/2018 | $ 814.35 | $ 35.30 | $ 849.55 | $ 398.49 | $ 451.06 | 46.91% | [illegible] | YES | 7/25/2018 | 7/25/18 SEND TO APPRAISER CL |
| 22 | 5470880 | RAHG | AZ | DL/751535 | SAFECO-REPL | 2006 | Toyota | Tacoma Pickup | [illegible] | 405874 | 405674 | [illegible] | 2/13/2018 | $ 721.89 | $ 29.42 | $ 751.31 | $ 351.19 | $ 399.32 | 46.88% | [illegible] | YES | 7/25/2018 | 7/25/18 SEND TO APPRAISER CL |
| 23 | 5475303 | RAHG | AZ | ML/558587 | SAFECO-REPL | 2010 | Honda | Civic | [illegible] | [illegible] | 378066 | MAUREEN COTNER | 2/21/2018 | $ 930.80 | $ 43.90 | $ 974.84 | $ 392.44 | $ 582.40 | 41.16% | [illegible] | YES | 7/25/2018 | 7/25/18 SEND TO APPRAISER CL |
| 24 | 5475407 | RAHG | AZ | ML/558518 | SAFECO-REPL | 2015 | Chevrolet | Silverado | [illegible] | [illegible] | 382164 | TINA STINE | 1/30/2018 | $ 779.10 | $ 45.07 | $ 824.17 | $ 363.48 | $ 460.69 | 44.35% | [illegible] | YES | 7/26/2018 | 7/25/18 SEND TO APPRAISER CL |
| 25 | 5467302 | RAHG | AZ | OG/558210 | SAFECO-REPL | 1997 | Chevrolet | Malibu | [illegible] | [illegible] | 270629 | ROBERT HERNANDEZ | 2/13/2018 | $ 557.39 | $ 27.30 | $ 584.69 | $ 275.80 | $ 308.89 | 47.14% | [illegible] | YES | 3/26/2018 | 3/26/18 SEND TO APPRAISER CL |
| 26 | 5465790 | RAHG | AZ | DL/557036 | SAFECO-REPL | 2015 | Ford | Transit | [illegible] | Y7972080 | 253780 | [illegible] | 2/12/2018 | $ 1,165.46 | $ 75.29 | $ 1,240.75 | $ 533.17 | $ 707.58 | 42.97% | [illegible] | YES | 3/26/2018 | [illegible] |
| 27 | 5467214 | RAHG | AZ | AM/558788 | SAFECO-REPL | 2010 | Chevrolet | Cobalt | [illegible] | Y8120751 | [illegible] | KELLY BOURGES | 2/12/2018 | $ 667.93 | $ 32.50 | $ 700.43 | $ 308.84 | $ 391.59 | 44.08% | [illegible] | YES | 3/26/2018 | 3/26/18 SEND TO APPRAISER CL |
| 28 | 5467205 | RAHG | AZ | AM/181980 | SAFECO-REPL | 2003 | Nissan | 350Z | [illegible] | [illegible] | [illegible] | JACLING NGUYEN | 2/12/2018 | $ 699.49 | $ 31.78 | $ 731.27 | $ 331.37 | $ 399.90 | 45.31% | [illegible] | YES | 3/26/2018 | 3/26/18 SEND TO APPRAISER CL |
| 29 | 5462870 | RAHG | AZ | DD/557631 | SAFECO-REPL | 2015 | Chevrolet | Silverado | [illegible] | [illegible] | 214846 | DIANNA JOHNSON | 2/7/2018 | $ 754.10 | $ 45.07 | $ 799.17 | $ 330.64 | $ 468.53 | 42.50% | [illegible] | YES | 3/26/2018 | 3/26/18 SEND TO APPRAISER CL |
| 30 | 5430673 | RAHG | AZ | ML/530070 | SAFECO-REPL | 2008 | Honda | Civic | [illegible] | Y7716340 | 179791 | [illegible] | 2/6/2018 | $ 910.90 | $ 43.94 | $ 954.84 | $ 382.44 | $ 582.40 | 41.10% | [illegible] | YES | 3/2/2018 | 3/2/18 SENT TO APPRAISER CL |
| 31 | 5421830 | RAHG | AZ | AM/181059 | SAFECO-REPL | 1994 | Mazda | B3000 Pickup | [illegible] | 43094065 | 803147 | ROGER DAY | 3/1/2018 | $ 508.34 | $ 23.94 | $ 532.28 | $ 228.00 | $ 304.28 | 42.48% | [illegible] | YES | 3/28/2018 | 3/28/18 SEND TO APPRAISER CL |
| 32 | 5408887 | RAHG | AZ | DL/558005 | SAFECO-REPL | 1997 | Acura | 3.0CL | [illegible] | Y7727226 | [illegible] | CHARLES SWORD | 1/30/2018 | $ 524.36 | $ 23.32 | $ 548.88 | $ 233.81 | $ 310.07 | 42.59% | [illegible] | YES | 3/2/2018 | 3/28/18 SENT TO APPRAISER CL |
| 33 | 5408890 | RAHG | AZ | DL/558007 | SAFECO-REPL | 2003 | Chevrolet | Silverado | [illegible] | Y7727226 | [illegible] | CHARLES SWORD | 1/29/2018 | $ 479.88 | $ 22.33 | $ 502.01 | $ 214.13 | $ 287.88 | 42.65% | [illegible] | YES | 3/2/2018 | 3/28/18 SENT TO APPRAISER CL |
| 34 | 5446477 | RAHG | AZ | AM/557806 | SAFECO-REPL | 2007 | Chevrolet | Silverado | [illegible] | [illegible] | [illegible] | HAZEL NORTON | 1/25/2018 | $ 483.40 | $ 22.65 | $ 506.05 | $ 215.88 | $ 290.18 | 42.68% | [illegible] | YES | 3/1/2018 | 3/28/18 SENT TO APPRAISER CL |
| 35 | 5442918 | RAHG | AZ | ML/559068 | SAFECO-REPL | 2004 | Volkswagen | Jetta | [illegible] | [illegible] | [illegible] | SYVANNA RAMIREZ | 1/22/2018 | $ 1,134.28 | $ 63.15 | $ 1,197.43 | $ 448.71 | $ 758.72 | 38.64% | 304257421 | YES | 3/16/2018 | 3/28/18 SENT TO APPRAISER CL |
| 36 | 5440431 | RAHG | AZ | AM/181088 | SAFECO-REPL | 2016 | Jeep | Wrangler | [illegible] | [illegible] | 870370 | JEREMY CHAFIN | 1/19/2018 | $ 1,033.54 | $ 67.38 | $ 1,100.92 | $ 458.30 | $ 642.62 | 41.63% | 304257421 | YES | 2/16/2018 | 3/28/18 SENT TO APPRAISER CL |
| 37 | 5440434 | RAHG | AZ | AM/181070 | SAFECO-REPL | 2015 | Chevrolet | Silverado | [illegible] | [illegible] | 878327 | JEREMY CHAFIN | 1/19/2018 | $ 754.10 | $ 45.07 | $ 799.17 | $ 338.64 | $ 460.53 | 42.50% | 304257421 | YES | 2/16/2018 | 3/28/18 SENT TO APPRAISER CL |
| 38 | 5437718 | RAHG | AZ | AM/558848 | SAFECO-REPL | 1998 | Toyota | Tacoma Pickup | [illegible] | [illegible] | 433756 | FRANKLIN HASKIN | 1/18/2018 | $ 638.38 | $ 22.22 | $ 660.56 | $ 280.10 | $ 381.46 | 42.74% | 304257421 | YES | 2/16/2018 | 3/28/18 SENT TO APPRAISER CL |
| 39 | 5423788 | RAHG | AZ | OMG/228185 | SAFECO-REPL | 2004 | Mazda | Tribute | [illegible] | [illegible] | [illegible] | GLENDA OCHOA | 1/4/2018 | $ 673.04 | $ 35.80 | $ 708.54 | $ 298.16 | $ 410.38 | 42.17% | [illegible] | YES | 2/8/2018 | 3/28/18 SENT TO APPRAISER CL |
| 40 | 5423731 | RAHG | AZ | JM/558884 | SAFECO-REPL | 2014 | GMC | Acadia | [illegible] | [illegible] | 818149 | ALMA REA | 1/4/2018 | $ 1,418.58 | $ 97.92 | $ 1,516.48 | $ 640.50 | $ 875.88 | 42.24% | [illegible] | YES | 2/9/2018 | 3/28/18 SENT TO APPRAISER CL |
| 41 | 5423715 | RAHG | AZ | ML/558001 | SAFECO-REPL | 2015 | Nissan | Titan | [illegible] | [illegible] | [illegible] | DALE NAMMENGA | 1/3/2018 | $ 956.34 | $ 60.75 | $ 1,017.09 | $ 452.35 | $ 564.70 | 44.47% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 42 | 5421605 | RAHG | AZ | AM/181054 | SAFECO-REPL | 2000 | Ford | Focus | [illegible] | [illegible] | 603182 | ROBERT/JENNA DAY | 1/3/2018 | $ 575.78 | $ 24.50 | $ 600.30 | $ 250.46 | $ 349.80 | 41.72% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 43 | 5418748 | RAHG | AZ | ML/558840 | SAFECO-REPL | 2016 | Chrysler | 200 | [illegible] | X5814310 | [illegible] | BARBARA BLACK | 12/28/2017 | $ 961.98 | $ 54.35 | $ 1,016.33 | $ 424.01 | $ 592.32 | 41.72% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 44 | [illegible] | RAHG | AZ | DL/558794 | SAFECO-REPL | 2007 | Nissan | Titan | [illegible] | Y8578712 | [illegible] | LATISHA ELLIOTT | 12/18/2017 | $ 958.88 | $ 38.65 | $ 996.51 | [illegible] | $ 317.52 | 43.88% | 304241180 | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 45 | 5407187 | RAHG | AZ | OMG/558384 | SAFECO-REPL | 2007 | Infiniti | M45 | [illegible] | [illegible] | 390452 | LUIS LOERA | 12/15/2017 | $ 611.12 | $ 35.38 | $ 646.48 | $ 338.08 | $ 408.59 | 42.10% | 304241180 | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 46 | 5408465 | RAHG | AZ | AM/580077 | SAFECO-REPL | 2011 | GMC | Sierra | [illegible] | [illegible] | 415880 | JOSE GARCIA | 12/15/2017 | $ 519.88 | $ 25.79 | $ 545.67 | $ 232.70 | $ 312.97 | 42.64% | 304241180 | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 47 | 5404437 | RAHG | AZ | AM/558883 | SAFECO-REPL | 2003 | Pontiac | Grand Am | [illegible] | X5720823 | [illegible] | KATHERINE CHENEY | 12/12/2017 | $ 814.07 | $ 48.37 | $ 862.44 | $ 548.84 | $ 313.80 | 63.80% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 48 | 5398054 | RAHG | AZ | JM/558812 | SAFECO-REPL | 2017 | Toyota | Highlander | [illegible] | Y8371080 | [illegible] | NYDIA LOPEZ | 12/11/2017 | $ 1,357.04 | $ 88.33 | $ 1,445.37 | $ 563.88 | $ 881.71 | 40.38% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 49 | 5400040 | RAHG | AZ | DL/558828 | SAFECO-REPL | 2002 | Chevrolet | Silverado | [illegible] | Y8487001 | 300587 | SEMONE WILLE | 12/8/2017 | $ 480.22 | $ 22.38 | $ 502.60 | $ 214.38 | $ 288.21 | 42.68% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 50 | [illegible] | RAHG | AZ | AM/558327 | SAFECO-REPL | 1998 | Ford | F Series | [illegible] | 170830 | 170830 | SAVANNAH KRYSIAK | 12/5/2017 | $ 622.42 | $ 26.87 | $ 649.29 | $ 269.88 | $ 379.40 | 41.54% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 51 | [illegible] | RAHG | AZ | AM/558543 | SAFECO-REPL | 2006 | Chrysler | Pacifica | [illegible] | [illegible] | [illegible] | REBECCA STRONG | 12/5/2017 | $ 684.28 | $ 28.81 | $ 713.09 | $ 302.15 | $ 411.75 | 42.32% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 52 | 5396833 | RAHG | AZ | OMG/ | SAFECO-REPL | 2011 | Nissan | Cube | [illegible] | [illegible] | [illegible] | STEPHANIE STROM | 12/5/2017 | $ 902.50 | $ 44.08 | $ 946.58 | $ 445.28 | $ 501.30 | 47.04% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 53 | 5392262 | RAHG | AZ | AM/558885 | SAFECO-REPL | 2000 | Ford | Ranger Pickup | [illegible] | [illegible] | 213489 | SHERRIL STOLWORTHY | 12/5/2017 | $ 520.28 | $ 24.96 | $ 545.24 | $ 231.73 | $ 313.51 | 42.50% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 54 | [illegible] | RAHG | AZ | AM/558188 | SAFECO-REPL | 2014 | Jeep | Grand Cherokee | [illegible] | GET POLICY | 176720 | SAVANNAH KRYSIAK | 12/5/2017 | $ 992.80 | $ 60.45 | $ 1,053.35 | $ 442.90 | $ 610.45 | 42.07% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 55 | [illegible] | RAHG | AZ | DL/558810 | SAFECO-REPL | 2012 | Jeep | Liberty | [illegible] | [illegible] | 212138 | ROSA SIERRA | 12/5/2017 | $ 605.60 | $ 29.72 | $ 635.32 | $ 278.14 | $ 357.18 | 43.78% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 56 | [illegible] | RAHG | AZ | OMG/558328 | SAFECO-REPL | 2008 | GMC | Sierra | [illegible] | [illegible] | 118801 | LUPE CASTRO | 11/25/2017 | $ 589.88 | $ 30.09 | $ 589.97 | $ 233.41 | $ 388.56 | 38.80% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 57 | [illegible] | RAHG | AZ | OMG/558325 | SAFECO-REPL | 2004 | Chevrolet | Silverado | [illegible] | [illegible] | [illegible] | LUPE CASTRO | 11/25/2017 | $ 1,462.80 | $ 39.38 | $ 1,492.18 | $ 611.38 | $ 881.79 | 40.88% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 58 | 5384307 | RAHG | AZ | AM/558517 | SAFECO-REPL | 2014 | Chevrolet | Express | [illegible] | [illegible] | 184148 | HEATHER SHELTON | 11/22/2017 | $ 712.10 | $ 33.81 | $ 746.91 | $ 329.65 | $ 417.28 | 44.14% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 59 | [illegible] | RAHG | AZ | JM/558725 | SAFECO-REPL | 2008 | Dodge | Dakota Pickup | [illegible] | Y8348224 | [illegible] | TIMOTHY/RENEE PATE | 11/21/2017 | $ 888.12 | $ 30.88 | $ 888.80 | $ 285.51 | $ 434.48 | 38.48% | [illegible] | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 60 | 5378457 | RAHG | AZ | OMG/558415 | SAFECO-REPL | 2012 | Hyundai | Elantra | [illegible] | [illegible] | [illegible] | MICHAEL PHILLIPS | 11/16/2017 | $ 873.42 | $ 48.47 | $ 922.00 | $ 413.32 | $ 508.77 | 44.82% | 304228142 | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 61 | [illegible] | RAHG | AZ | ML/510555 | SAFECO-REPL | | | | | | 715375 | ALEXIANNA PATTERSON | 10/31/2017 | $ 835.38 | $ 58.10 | $ 894.42 | $ 408.70 | $ 507.72 | 43.80% | 304217875 | YES | 1/25/2018 | 3/28/18 SENT TO APPRAISER CL |
| 62 | | | | | | | | | | | | | | | | | | | | | | | |
| 63 | | | | | | | | | | | | | | | | | | | | | | | |
| 64 | | | | | | | | | | | | | | | | Total Amount Billed | $ 50,015.05 | | | | | | |
| 65 | | | | | | | | | | | | | | | | Total Amount Paid | $ 21,487.92 | | | | | | |
| 66 | | | | | | | | | | | | | | | | Total Amount Owed | $ 28,527.13 | | | | | | |

# EXHIBIT B

CHRIS DEROSE
Clerk of the Superior Court
By Denise Hill, Deputy
Date 10/23/2018 Time 11:05:25
Description                    Amount
---------- CASE# CV2018-096793
CIVIL NEW COMPLAINT           333.00

TOTAL AMOUNT                  333.00
                Receipt# 26864054

1  Brad A. Denton, #016454
   Brad@DentonPeterson.com
2  Sterling R. Peterson, #020628
   Sterling@DentonPeterson.com
3   **DENTON PETERSON, PC**
   ATTORNEYS & COUNSELORS AT LAW
4
   1930 N. Arboleda Road, Suite 200
5  Mesa, Arizona 85213
   Telephone: (480) 325-9900
6  Facsimile: (480) 325-9901
   https://arizonabusinesslawyeraz.com
7  *Attorneys for Plaintiffs*

8        **IN THE SUPERIOR COURT OF THE STASTE OF ARIZONA**
9          **IN AND FOR THE COUNTY OF MARICOPA**

10  DNS AUTO GLASS SHOP, lLC, an Arizona
    limited liability company, dba GLASS          Case No. CV2018-096793
11  REPLACEMENTS
12       Plaintiffs,
                                                  **COMPLAINT**
13
    v.                                            *(Breach of Contract, Breach of the Duty of*
14                                                *Good Faith and Fair Dealing, Unjust*
15  SAFECO INSURANCE COMPANY OF                   *Enrichment)*
    AMERICA, a foreign insurance company;
16  and JOHN AND JANE DOES I-X, XYZ
    ENTITIES I-V,
17
18       Defendant.
19

20       Plaintiff DNS GLASS SHOP, LLC, dba GLASS REPLACEMENTS an Arizona
21
22  limited liability company ("DNS"), by and through undersigned counsel, for their Complaint
23  against Defendant, alleges as follows:
24              **PARTIES; JURISDICTION; VENUE**
25
        1.      Plaintiff is, and was at all material times relevant hereto, an Arizona limited
26
27  liability company authorized to conduct business in the State of Arizona.  Plaintiff operates
28  under the registered trade name of Glass Replacements.

1

2.      Upon information and belief, Safeco Insurance Company of America is, and was at all material times relevant hereto, a foreign insurance company registered to conduct the business of insurance in Arizona through Arizona's Department of Insurance.

3.      All of the named Defendants herein, whether identified or designated as John Doe or Jane Doe, are intended to represent individuals acting either in their individual capacities, or as agents, representatives, directors, shareholders, or employees duly authorized and acting within their employment with regards to the transactions hereinafter alleged. Where applicable, each of the named individual Defendants alleged herein was acting for and on behalf of the marital communities composed of themselves and their spouse, and the designations John Doe and Jane Doe as used herein are used for the purposes of identifying the unknown spouses of the named Defendants.  Leave of Court is requested to substitute the true names as they are learned.

4.      All acts of the Defendants herein alleged to have been done by the individually named defendant companies, corporations, partnerships and other business entities named herein were done by their duly authorized agents, directors, shareholders or employees acting within the scope of their employment or agency, and all acts herein alleged were agreed to and ratified by the individually named defendant companies, corporations, partnerships and other business entities alleged herein.  Each of the individually named defendant companies, corporations, partnerships and other business entities alleged herein, whether identified or not, were in fact doing business in Maricopa County, Arizona, and caused events to occur and/or entered into contracts and agreements in the state of Arizona with the named Plaintiff.

DP DENTON PETERSON, PC
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

2

5. In the event that the individually named defendant companies, corporations, partnerships and other business entities alleged herein were not duly authorized and legally constituted business entities, all actions taken on behalf of said defendant organizations were done for and on behalf of the principals of said defendant organizations, which principals are either identified herein or designated John and Jane Does I-X and which corporations or companies, if unknown at this time, are designated XYZ Entities. Leave is requested of the Court to add individually named companies, corporations, partnerships and other business entities and additional named Defendants as they are learned.

6. The acts, omissions, representations, understandings, agreements, and contracts hereinafter alleged were either done by, agreed to or ratified by all Defendants herein, whether named or unnamed, and all Defendants benefited either directly or indirectly from the acts, omissions, representations, understandings, agreements and contracts hereinafter alleged. As a result of the benefit derived and the agreement to or ratification of the acts, omissions, representations, understandings, agreements and contracts, Defendants are jointly and severally liable to Plaintiff for the acts, omissions, representations, understandings, agreements, and contracts alleged herein.

7. Each and every named and unnamed Defendant and business entity caused actions to occur within the state of Arizona sufficient to confer upon the courts of the state of Arizona jurisdiction over the persons and business entities herein alleged.

8. Jurisdiction and venue are proper in this Court.

## GENERAL BACKGROUND

9. Plaintiff is engaged in the auto glass replacement and installation business.

3

10.     When the owner of an automobile has glass coverage on his or her automobile insurance policy (i.e., the "Contract" between the Defendants and the insured) and is in need of having glass replaced on his or her vehicle, the owner of the vehicle may assign its claim to proceeds for reimbursement from his or her insurance company for the replacement and installation of the new glass to the Plaintiff in exchange for Plaintiff performing the services and replacement and installation of the new glass.

11.     In other words, Plaintiff will replace and install new glass on the insured's vehicle, and, in exchange for that service, the insured will assign to the Plaintiff his or her right to collect the insurance proceeds from his or her insurance company.

12.     With that assignment for reimbursement, Plaintiff then sends an invoice to the vehicle owner's insurance carrier for reimbursement of the fees.

13.     The vehicle owner's insurance carrier then sends a check to Plaintiff to pay for the replacement glass and installation services it performed on the insured's automobile.

14.     Plaintiff is an assignee of the insured's contractual claim for reimbursement for the proceeds for the replacement and installation of the glass.

## DEFENDANT'S FAILURE TO PAY

15.     From January 15, 2018 through July 16, 2018, Plaintiff replaced and installed glass for 76 people who had insurance through Defendant Safeco. [See *Exhibit A* attached hereto with spreadsheet containing information regarding each claim].

16.     Plaintiff procured an assignment of claims from each of the 76 insureds for the replacement and installation of the glass.

DENTON PETERSON, PC
1930 N. Arboleda Road, Suite 200
Mesa, AZ 85213

4

17.    Plaintiff submitted invoices to Defendant for reimbursement for the replacement and installation of the glass.

18.    Defendant paid a portion of each of the 76 invoices, but failed to pay the full amount.

19.    Specifically, the 108 invoices Plaintiff sent to Defendant Safeco totaled $73,967.84 for the replacement and installation of glass on each of the automobiles. However, Defendant Safeco only paid a total of $30,547.37.   Thus, Safeco still owes Plaintiff an outstanding balance of $43,420.47 on the invoices.  [See *Exhibit A*].

20.    Plaintiff is the assignee of the claims of the 76 insureds against their respective Defendant insurance company, and, as a result, Plaintiff steps into the shoes of Defendant's insureds and is entitled to all of the insured's rights under the contract as it relates to the replacement and installation of the glass.

21.    Defendant owes a collective outstanding balance of $43,420.47 to Plaintiff for the unpaid amounts owed on the invoices for the 76 assigned claims.

22.    Despite Plaintiff's best efforts to collect the outstanding balance, Defendant has refused to pay the remaining balance on the claims.

23.    Plaintiff has been damaged as a result of Defendant's refusal to pay the amounts it owes to Plaintiff.

24.    The conduct of Defendant constitutes a breach of its obligations to Plaintiff as an assignee of the insured's claims.

5

## CLAIMS FOR RELIEF

### COUNT ONE
**(Breach of Contract)**

25.      Plaintiff incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

26.      Plaintiff is an assignee of the insured's claims against Defendant as it relates to the claims for replacement and installation of glass on the insured's automobiles.

27.      As a result, Plaintiff steps into the shoes of the insureds and is entitled to all of the rights and benefits of the insured under their contract with the Defendant.

28.      Defendant's failure to pay the outstanding balance on the invoices constitutes a breach of their contractual obligations to Plaintiff as an assignee under the contract.

29.      Plaintiff suffered damages as a result of Defendant's breach in the amount of not less than $43,420.47 for Defendant's failure to remit payments in accordance with the invoices, plus damages for all fees and costs incurred for instituting this action and other direct and consequential damages, in amounts to be proven at trial.

30.      This action arises out of contract, and therefore, pursuant to A.R.S. § 12-341.01 and pursuant to the parties' Agreement, Plaintiff is entitled to recover its reasonable attorneys' fees and costs incurred as a result of Defendant's failure to pay the amounts due to Plaintiff.

### COUNT TWO
*(Breach of Duty of Good Faith and Fair Dealing)*

5.      Plaintiff incorporates by this reference the previous allegations.

6.      Defendant had a duty of good faith and fair dealing in this transaction with Plaintiff because Plaintiff stepped into the shoes of the insureds as assignee under the contract

DENTON PETERSON, PC
1930 N. ARBOLEDA ROAD, SUITE 200
MESA, AZ 85213

1   between the insured and Defendant and Plaintiff is entitled to the insured's right to be dealt

2   with fairly in its contract with Defendant.

3
4       7.      Defendant knew or should have known that its conduct (i.e., of failing to pay

    the Plaintiff the full amount in the invoices) was inexcusable and did not comport with the
5
6   standards of good faith and fair dealing.

7
        8.      Plaintiff has been damaged as a direct and proximate result of Defendant's
8
9   breach of the duty of good faith and fair dealing which damages include, but are not limited

10  to, not less than $43,420.47 for Defendant's failure to remit payments in accordance with the

11  invoices, plus damages for all fees and costs incurred for instituting this action and other

12  direct and consequential damages, in amounts to be proven at trial.
13
14      9.      This matter arises out of contract, and Plaintiff is entitled to its attorneys' fees

15  and costs of suit pursuant to the provisions of A.R.S. §12-341, *et seq.*

16
                            **COUNT THREE**
17                          *(Unjust Enrichment)*

18
        10.     Plaintiff incorporates by this reference the previous allegations.
19
20      11.     Defendant has been unjustly enriched, and Plaintiff unjustly impoverished, to

21  the extent that Defendant has received valuable consideration from Plaintiff for the value of

22  the replacement and installation of the glass which Defendant agreed to, but did not, pay in

23  accordance with the terms of the contract.
24
25      12.     Plaintiff suffered damages as a result of this unjust enrichment in an amount to

26  be proven at trial, but not less than the jurisdictional minimum in this Court.

27
28

## PRAYER FOR RELIEF

THEREFORE, Plaintiff prays the Court enter judgment against Defendant as follows:

A.      For compensatory, incidental, and consequential damages in an amount to be proven at trial, but not less than the amounts described above;

B.      For Plaintiff's reasonable attorneys' fees and costs herein and, in the event judgment is obtained by default, for reasonable attorneys' fees in the amount of $5,000.00;

C.      For interest at the highest rate allowed by law from the earliest time permitted by law until the judgment is paid in full; and,

D.      For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 22 day of October, 2018.

DENTON PETERSON, P.C.

Brad A. Denton
Sterling R. Peterson
1930 N. Arboleda Road, Suite 200
Mesa, AZ 85213
*Attorneys for Plaintiff*

8

# Exhibit A

Total Amount Billed   $ 73,567.84
Total Amount Paid     $ 30,147.27
Total Amount Owed     $ 53,420.57

Page 1 of 1

# EXHIBIT C

**In the Superior Court of the State of Arizona**
in and for the County of ~~Maricopa~~

~~CV2018-096795~~

CV2018-096795

CHRIS DEROSE, CLERK
BY _____ DEP

NO HILL, FILED

18 OCT 23  AM II: 10

Is Interpreter Needed?  ☐ Yes  ☐ No
If yes, what language: _____

**CIVIL COVER SHEET- NEW FILING ONLY**
(Please Type or Print)

Plaintiff's Attorney  Brad A. Denton; Sterling Peterson

Attorney Bar Number  016454, 020628

Plaintiff's Name(s): (List all)       Plaintiff's Address:        Phone #:        Email Address:

Right At Home Glass, LLC c/o Denton Peterson, P.C., 1930 N. Arboleda, Suite 200, Mesa, AZ 85213 - 480-325-9900

(List additional Plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All)

Safeco Insurance Company of America

(List additional Defendants on page two and/or attach a separate sheet)

## NATURE OF ACTION

**(Place an "X" next to the one case category that most accurately describes your primary case.)**

**100 TORT MOTOR VEHICLE:**
☐ 101 Non-Death/Personal Injury
☐ 102 Property Damage
☐ 103 Wrongful Death

**110 TORT NON-MOTOR VEHICLE:**

☐ 111 Negligence
☐ 112 Product Liability – Asbestos
☐ 112 Product Liability – Tobacco
☐ 112 Product Liability – Toxic/Other
☐ 113 Intentional Tort

☐ 114 Property Damage
☐ 115 Legal Malpractice
☐ 115 Malpractice -- Other professional
☐ 117 Premises Liability
☐ 118 Slander/Libel/Defamation
☐ 116 Other (Specify) _____

**120 MEDICAL MALPRACTICE:**

☐ 121 Physician M.D.     ☐ 123 Hospital
☐ 122 Physician D.O      ☐ 124 Other

**130 CONTRACTS:**
☐ 131 Account (Open or Stated)
☐ 132 Promissory Note
☐ 133 Foreclosure
☐ 138 Buyer-Plaintiff
☐ 139 Fraud
☒ 134 Other Contract (i.e. Breach of Contract)
☐ 135 Excess Proceeds-Sale
☐ Construction Defects (Residential/Commercial)
  ☐ 136 Six to Nineteen Structures
  ☐ 137 Twenty or More Structures

**150-199 OTHER CIVIL CASE TYPES:**

☐ 156 Eminent Domain/Condemnation
☐ 151 Eviction Actions (Forcible and Special Detainers)
☐ 152 Change of Name
☐ 153 Transcript of Judgment
☐ 154 Foreign Judgment
☐ 158 Quiet Title
☐ 160 Forfeiture
☐ 175 Election Challenge
☐ 179 NCC-Employer Sanction Action
  (A.R.S. §23-212)

Case No._____

☐ 180 Injunction against Workplace Harassment
☐ 181 Injunction against Harassment
☐ 182 Civil Penalty
☐ 186 Water Rights (Not General Stream Adjudication)
☐ 187 Real Property
☐ Special Action against Lower Courts
  (See Lower Court Appeal cover sheet in Maricopa)
☐ 194 Immigration Enforcement Challenge
  (A.R.S. §§1-501, 1-502, 11-1051)

### 150-199 UNCLASSIFIED CIVIL:

☐ Administrative Review
  (See Lower Court Appeal cover sheet in Maricopa)
☐ 150 Tax Appeal
  (All other tax matters must be filed in the AZ Tax Court)
☐ 155 Declaratory Judgment
☐ 157 Habeas Corpus
☐ 184 Landlord Tenant Dispute- Other
☐ 190 Declaration of Factual Innocence
  (A.R.S. §12-771)

☐ 191 Declaration of Factual Improper Party Status
☐ 193 Vulnerable Adult (A.R.S. §46-451)
☐ 165 Tribal Judgment
☐ 167 Structured Settlement (A.R.S. §12-2901)
☐ 169 Attorney Conservatorships (State Bar)
☐ 170 Unauthorized Practice of Law (State Bar)
☐ 171 Out-of-State Deposition for Foreign Jurisdiction
☐ 172 Secure Attendance of Prisoner
☐ 173 Assurance of Discontinuance
☐ 174 In-State Deposition for Foreign Jurisdiction
☐ 176 Eminent Domain– Light Rail Only
☐ 177 Interpleader– Automobile Only
☐ 178 Delayed Birth Certificate (A.R.S. §36-333.03)
☐ 183 Employment Dispute- Discrimination
☐ 185 Employment Dispute-Other
☐ 196 Verified Rule 45.2 Petition
☐ 195(a) Amendment of Marriage License
☐ 195(b) Amendment of Birth Certificate
☐ 163 Other _____
  (Specify)

## RULE 26.2 DISCOVERY TIER or AMOUNT PLEADED:

(State the amount in controversy pleaded or place an "X" next to the discovery tier to which the pleadings allege the case would belong under Rule 26.2.)

☐ Amount Pleaded $ _____        ☐ Tier 1        ☒ Tier 2        ☐ Tier 3

## EMERGENCY ORDER SOUGHT

☐ Temporary Restraining Order       ☐ Provisional Remedy       ☐ OSC       ☐ Election Challenge
☐ Employer Sanction                 ☐ Other (Specify) _____

## COMMERCIAL COURT (Maricopa County Only)

☐ This case is eligible for the Commercial Court under Rule 8.1, and Plaintiff requests assignment of this case to the commercial Court. More information on the commercial court, including the most recent forms, are available on the Court's website at https://www.superiorcourt.maricopa.gov/commercial-court/.

**Additional Plaintiff(s):**

_____

_____

**Additional Defendant(s):**

_____

_____

# EXHIBIT D

**In the Superior Court of the State of Arizona**
**in and for the County of Maricopa**

CV2018-096793

CV2018-096793

CV2018-096793

CIVIL - NEW FILING ONLY
(Please Type or Print)

CHRIS DEROSE, CLERK
BY
DEP

Is Interpreter Needed?  ☐ Yes  ☐ No   D. HILL, FILED
If yes, what language:        18 OCT 23  AM 11:0 1

Plaintiff's Attorney  Brad A. Denton; Sterling Peterson

Attorney Bar Number  016454, 020628

| Plaintiff's Name(s): (List all) | Plaintiff's Address: | Phone #: | Email Address: |
|---|---|---|---|

DNS Auto Glass Shop LLC c/o Denton Peterson, P.C., 1930 N. Arboleda, Suite 200, Mesa, AZ 85213 - 480-325-9900

(List additional Plaintiffs on page two and/or attach a separate sheet).

Defendant's Name(s): (List All)

Safeco Insurance Company of America

(List additional Defendants on page two and/or attach a separate sheet)

## NATURE OF ACTION

**(Place an "X" next to the one case category that most accurately describes your primary case.)**

**100 TORT MOTOR VEHICLE:**

☐ 101 Non-Death/Personal Injury
☐ 102 Property Damage
☐ 103 Wrongful Death

**110 TORT NON-MOTOR VEHICLE:**

☐ 111 Negligence
☐ 112 Product Liability – Asbestos
☐ 112 Product Liability – Tobacco
☐ 112 Product Liability – Toxic/Other
☐ 113 Intentional Tort

☐ 114 Property Damage
☐ 115 Legal Malpractice
☐ 115 Malpractice – Other professional
☐ 117 Premises Liability
☐ 118 Slander/Libel/Defamation
☐ 116 Other (Specify) _____

**120 MEDICAL MALPRACTICE:**

☐ 121 Physician M.D.   ☐ 123 Hospital
☐ 122 Physician D.O   ☐ 124 Other

**130 CONTRACTS:**

☐ 131 Account (Open or Stated)
☐ 132 Promissory Note
☐ 133 Foreclosure
☐ 138 Buyer-Plaintiff
☐ 139 Fraud
☒ 134 Other Contract (i.e. Breach of Contract)
☐ 135 Excess Proceeds-Sale
☐ Construction Defects (Residential/Commercial)
  ☐ 136 Six to Nineteen Structures
  ☐ 137 Twenty or More Structures

**150-199 OTHER CIVIL CASE TYPES:**

☐ 156 Eminent Domain/Condemnation
☐ 151 Eviction Actions (Forcible and Special Detainers)
☐ 152 Change of Name
☐ 153 Transcript of Judgment
☐ 154 Foreign Judgment
☐ 158 Quiet Title
☐ 160 Forfeiture
☐ 175 Election Challenge
☐ 179 NCC-Employer Sanction Action
  (A.R.S. §23-212)

Case No._____

☐180 Injunction against Workplace Harassment
☐181 Injunction against Harassment
☐182 Civil Penalty
☐186 Water Rights (Not General Stream Adjudication)
☐187 Real Property
☐ Special Action against Lower Courts
   (See Lower Court Appeal cover sheet in Maricopa)
☐194 Immigration Enforcement Challenge
   (A.R.S. §§1-501, 1-502, 11-1051)

## 150-199 UNCLASSIFIED CIVIL:

☐ Administrative Review
   (See Lower Court Appeal cover sheet in Maricopa)
☐150 Tax Appeal
   (All other tax matters must be filed in the AZ Tax
   Court)
☐155 Declaratory Judgment
☐157 Habeas Corpus
☐184 Landlord Tenant Dispute- Other
☐190 Declaration of Factual Innocence
   (A.R.S. §12-771)

☐191 Declaration of Factual Improper Party Status
☐193 Vulnerable Adult (A.R.S. §46-451)
☐165 Tribal Judgment
☐167 Structured Settlement (A.R.S. §12-2901)
☐169 Attorney Conservatorships (State Bar)
☐170 Unauthorized Practice of Law (State Bar)
☐171 Out-of-State Deposition for Foreign Jurisdiction
☐172 Secure Attendance of Prisoner
☐173 Assurance of Discontinuance
☐174 In-State Deposition for Foreign Jurisdiction
☐176 Eminent Domain– Light Rail Only
☐177 Interpleader– Automobile Only
☐178 Delayed Birth Certificate (A.R.S. §36-333.03)
☐183 Employment Dispute- Discrimination
☐185 Employment Dispute-Other
☐196 Verified Rule 45.2 Petition
☐195(a) Amendment of Marriage License
☐195(b) Amendment of Birth Certificate
☐163 Other _____
               (Specify)

## RULE 26.2 DISCOVERY TIER or AMOUNT PLEADED:

(State the amount in controversy pleaded or place an "X" next to the discovery tier to which the pleadings allege the case
would belong under Rule 26.2.)

☐ Amount Pleaded $ _____    ☐ Tier 1    ☒ Tier 2    ☐ Tier 3

## EMERGENCY ORDER SOUGHT

☐ Temporary Restraining Order    ☐ Provisional Remedy    ☐ OSC    ☐ Election Challenge
☐ Employer Sanction    ☐ Other (Specify) _____

## COMMERCIAL COURT (Maricopa County Only)

☐ This case is eligible for the Commercial Court under Rule 8.1, and Plaintiff requests assignment of this case to the
commercial Court. More information on the commercial Court, including the most recent forms, are available on the
Court's website at https://www.superiorcourt.maricopa.gov/commercial-court/.

**Additional Plaintiff(s):**

_____
_____

**Additional Defendant(s):**

_____
_____

# EXHIBIT E

CHRIS DEROSE, CLERK
BY _____ DEP
D. HILL, FILED

18 OCT 23 AM II: 11

Brad A. Denton, #016454
Brad@DentonPeterson.com
Sterling R. Peterson, #020628
Sterling@DentonPeterson.com

**DP | DENTON PETERSON, PC**
ATTORNEYS & COUNSELORS AT LAW

1930 N. ARBOLEDA ROAD, SUITE 200
MESA, ARIZONA 85213
TELEPHONE: (480) 325-9900
FACSIMILE: (480) 325-9901
HTTPS://ARIZONABUSINESSLAWYERAZ.COM

*Attorneys for Plaintiffs*

## IN THE SUPERIOR COURT OF THE STASTE OF ARIZONA
## IN AND FOR THE COUNTY OF MARICOPA

RIGHT AT HOME GLASS, LLC, a foreign
entity registered to do business in Arizona,

Case No. CV2018-096795

Plaintiffs,

v.

**CERTIFICATE REGARDING
COMPULSORY ARBITRATION**

SAFECO INSURANCE COMPANY OF
AMERICA, a foreign insurance company;
and JOHN AND JANE DOES I-X, XYZ
ENTITIES I-V,

Defendant.

Plaintiff, by and through undersigned counsel, hereby certifies that it knows the dollar limits and any other limitations set forth by the Local Rules of Practice for the applicable Court, and further certifies that this case is subject to compulsory arbitration.

RESPECTFULLY SUBMITTED this 22 day of October, 2018.

DENTON PETERSON, P.C.

Brad A. Denton
Sterling R. Peterson
1930 N. Arboleda Road, Suite 200
Mesa, AZ 85213
*Attorneys for Plaintiff*

1

# EXHIBIT F

CHRIS DEROSE, CLERK
BY
D. HILL, FILED
DEP
18 OCT 23 AM 11: 03

1

2

Brad A. Denton, #016454
Brad@DentonPeterson.com
Sterling R. Peterson, #020628
Sterling@DentonPeterson.com

3

**DP | DENTON PETERSON, PC**
ATTORNEYS & COUNSELORS AT LAW

4

1930 N. ARBOLEDA ROAD, SUITE 200
MESA, ARIZONA 85213
TELEPHONE: (480) 325-9900
FACSIMILE: (480) 325-9901
HTTPS://ARIZONABUSINESSLAWYERAZ.COM

5

6

7

*Attorneys for Plaintiffs*

8

**IN THE SUPERIOR COURT OF THE STASTE OF ARIZONA**

9

**IN AND FOR THE COUNTY OF MARICOPA**

10

DNS AUTO GLASS SHOP, lLC, an Arizona

11

limited liability company, dba GLASS
REPLACEMENTS

Case No. CV2018-096793

12

Plaintiffs,

13

**CERTIFICATE REGARDING
COMPULSORY ARBITRATION**

14

v.

15

SAFECO INSURANCE COMPANY OF
AMERICA, a foreign insurance company;

16

and JOHN AND JANE DOES I-X, XYZ

17

ENTITIES I-V,

18

Defendant.

19

Plaintiff, by and through undersigned counsel, hereby certifies that it knows the dollar

20

limits and any other limitations set forth by the Local Rules of Practice for the applicable

21

Court, and further certifies that this case is subject to compulsory arbitration.

22

RESPECTFULLY SUBMITTED this *22* day of October, 2018.

23

24

**DENTON PETERSON, P.C.**

25

26

Brad A. Denton
Sterling R. Peterson

27

1930 N. Arboleda Road, Suite 200
Mesa, AZ 85213

28

*Attorneys for Plaintiff*

1

# EXHIBIT G

1

2

3

4

5

6

7

8

9

10

11

12

13

CHRIS DEROSE, CLERK
RECEIVED SE
DOCUMENT DEPOSITORY

18 OCT 25   AM II: 58

FILED BY: 

## IN THE MARICOPA COUNTY SUPERIOR COURT
## IN AND FOR THE STATE OF ARIZONA

**Case Number Correct**
**Caption Variation Noted**

Auto Glass Shop, LLC, and Arizona limited
liability company,
             **Plaintiffs**

Vs.

Safeco Insurance Company of America, a
foreign insurance company, John and Jane
Does I-X; XYZ Entities I-V,
             **Defendants**

**AFFIDAVIT of SERVICE by**
**PRIVATE PERSON**

Case no. CV2018-096795
Documents Served:
1.  Summons
2.  Complaint
3.  Certificate Regarding Compulsory
    Arbitration

14

15

16

17

        THE UNDERSIGNED, Richard G. Younger Jr., cert #7079, Maricopa County, authorized to
serve process under the laws of the State of Arizona, certifies:  That such person is fully qualified to
serve process in this cause having been so authorized by the laws of the State of Arizona; that the
undersigned stated to the party was so authorized, and also stated the nature of the papers being
served.
The instruments and documents herein described as having been served on this action were received
from Denton Peterson, PC on October 22, 2018.

18

19

**PARTY SERVED**                    **ADDRESS WHERE SERVED**                    **DATE & TIME OF SERVICE**
Arizona Department of Insurance  100 N. 15th Ave, Phoenix, AZ          October 24, 2018 at 12:05 p.m.

20

21

22

23

**MANNER OF SERVICE EFFECTED UPON PART**
Served the Arizona Department of Insurance.  Elizabeth V., clerk, accepted.

I certify under the penalty of perjury that the foregoing is true and correct.

server

24

25

26

27

28

FILED 10/29/18 12:28pm
CHRIS DEROSE, Clerk
By B. Romero
B. Romero, Deputy

CHRIS DEROSE, CLERK
RECEIVED SE
DOCUMENT DEPOSITORY

18 OCT 26  PM 12: 28

# IN THE MARICOPA COUNTY SUPERIOR COURT
## IN AND FOR THE STATE OF ARIZONA

| | |
|---|---|
| **Right at Home Glass, LLC, a foreign entity registered to do business in Arizona,** **Plaintiffs** Vs. **Safeco Insurance Company of America, a foreign insurance company, and John and Jane Does I-X; XYZ Entities I-V,** **Defendants** | **AFFIDAVIT of SERVICE by PRIVATE PERSON (Amended)** Case no. CV2018-096795 Documents Served: 1. Summons 2. Complaint 3. Certificate Regarding Compulsory Arbitration |

THE UNDERSIGNED, Richard G. Younger Jr., cert #7079, Maricopa County, authorized to serve process under the laws of the State of Arizona, certifies:  That such person is fully qualified to serve process in this cause having been so authorized by the laws of the State of Arizona; that the undersigned stated to the party was so authorized, and also stated the nature of the papers being served.

The instruments and documents herein described as having been served on this action were received from Denton Peterson, PC on October 22, 2018.

| PARTY SERVED | ADDRESS WHERE SERVED | DATE & TIME OF SERVICE |
|---|---|---|
| Arizona Dept of Insurance | 100 N. 15th Ave, Phoenix, AZ | October 24, 2018 at 12:05 p.m. |

MANNER OF SERVICE EFFECTED UPON PART
Served the Arizona Department of Insurance.  Elizabeth V., clerk, accepted.

I certify under the penalty of perjury that the foregoing is true and correct.

server

-1-

# EXHIBIT H

FILED 10/29/18 12:27pm
CHRIS DEROSE, Clerk
By B. Romero
B. Romero, Deputy

CHRIS DEROSE, CLERK
RECEIVED SE
DOCUMENT DEPOSITORY

18 OCT 26  PM 12: 27

1

2

3

4

# IN THE MARICOPA COUNTY SUPERIOR COURT
## IN AND FOR THE STATE OF ARIZONA

5

6

| | |
|---|---|
| 7  **DNS Auto Glass Shop, LLC, an Arizona limited** | **AFFIDAVIT of SERVICE by**<br>**PRIVATE PERSON (Amended)** |
| 8  **liability company, dba Glass Replacements,**<br>**Plaintiffs** | Case no. CV2018-096793<br>Documents Served: |
| 9  **Vs.** | 1. Summons<br>2. Complaint |
| 10 **Safeco Insurance Company of America, a** | 3. Certificate Regarding Compulsory<br>Arbitration |
| 11 **foreign insurance company, and John and Jane**<br>**Does I-X; XYZ Entities I-V,** | |
| 12 **Defendants** | |
| 13 | |

14      THE UNDERSIGNED, Richard G. Younger Jr., cert #7079, Maricopa County, authorized to
15 serve process under the laws of the State of Arizona, certifies: That such person is fully qualified to
   serve process in this cause having been so authorized by the laws of the State of Arizona; that the
16 undersigned stated to the party was so authorized, and also stated the nature of the papers being
   served.
17 The instruments and documents herein described as having been served on this action were received
   from Denton Peterson, PC on October 22, 2018.

18

| PARTY SERVED | ADDRESS WHERE SERVED | DATE & TIME OF SERVICE |
|---|---|---|
| 19  Arizona Dept of Insurance | 100 N. 15th Ave, Phoenix, AZ | October 24, 2018 at 12:05 p.m. |

20 **MANNER OF SERVICE EFFECTED UPON PART**
   Served the Arizona Department of Insurance. Elizabeth V., clerk, accepted.

21 I certify under the penalty of perjury that the foregoing is true and correct.

22

23                                                                                        server

24

25

26

27

28

-1-

CHRIS DEROSE, CLERK
RECEIVED SE
DOCUMENT DEPOSITORY

18 OCT 25  AM 11: 58

FILED BY: ___

## IN THE MARICOPA COUNTY SUPERIOR COURT
## IN AND FOR THE STATE OF ARIZONA

Case Number Correct
Caption Variation Noted

| | |
|---|---|
| Auto Glass Shop, LLC, and Arizona limited liability company,<br>    **Plaintiffs**<br><br>Vs.<br><br>Safeco Insurance Company of America, a foreign insurance company, John and Jane Does I-X; XYZ Entities I-V,<br>    **Defendants** | **AFFIDAVIT of SERVICE by PRIVATE PERSON**<br><br>Case no. CV2018-096793<br>Documents Served:<br>1. Summons<br>2. Complaint<br>3. Certificate Regarding Compulsory Arbitration |

THE UNDERSIGNED, Richard G. Younger Jr., cert #7079, Maricopa County, authorized to serve process under the laws of the State of Arizona, certifies: That such person is fully qualified to serve process in this cause having been so authorized by the laws of the State of Arizona; that the undersigned stated to the party was so authorized, and also stated the nature of the papers being served.

The instruments and documents herein described as having been served on this action were received from Denton Peterson, PC on October 22, 2018.

| PARTY SERVED | ADDRESS WHERE SERVED | DATE & TIME OF SERVICE |
|---|---|---|
| Arizona Department of Insurance | 100 N. 15th Ave, Phoenix, AZ | October 24, 2018 at 12:05 p.m. |

MANNER OF SERVICE EFFECTED UPON PART
Served the Arizona Department of Insurance. Elizabeth V., clerk, accepted.

I certify under the penalty of perjury that the foregoing is true and correct.

_____ server

-1-

# EXHIBIT I

Chris DeRose, Clerk of Court
*** Electronically Filed ***
M. Cain, Deputy
12/3/2018 11:02:00 PM
Filing ID 9940936

1

2   **THE CAVANAGH LAW FIRM**
    A Professional Association
3   **1850 NORTH CENTRAL AVENUE**
    **SUITE 2400**
    **PHOENIX, ARIZONA 85004-4527**
4   **(602) 322-4000**

5   Cassandra V. Meyer, SBN 021124
    cmeyer@cavanaghlaw.com
6   Karen Stafford, SBN 030308
    kstafford@cavanaghlaw.com
7   Karen N. Wohlgemuth, SBN 033799
    kwohlgemuth@cavanaghlaw.com
8   Attorneys for Defendant

9           IN THE SUPERIOR COURT OF THE STATE OF ARIZONA

10              IN AND FOR THE COUNTY OF MARICOPA

11  RIGHT AT HOME GLASS, LLC, a foreign
    entity registered to do business in Arizona,      **NO. CV2018-096795**
12
                                    Plaintiff,
13                                                     **DEFENDANT'S MOTION TO**
    v.                                                 **DISMISS AND MOTION TO**
14                                                     **COMPEL APPRAISAL**
    SAFECO INSURANCE COMPANY OF
15  AMERICA, a foreign insurance company;             ***Oral Argument Requested***
    and JOHN AND JANE DOES I-X, XYZ
16  ENTITIES I-V,
17                                  Defendant.
18
19          Defendant Safeco Insurance Company of America ("Safeco" or "Defendant") by
20  and through undersigned counsel, hereby respectfully moves the Court to dismiss
21  Plaintiff's Complaint in its entirety pursuant to both Arizona Rules of Civil Procedure
22  12(b)(6) and 12(b)(1), and in the alternative, moves to compel Appraisal pursuant to the
23  requirements of the insurance policy.[1]   This Motion is supported by the following

24  _____
    [1] Safeco has also moved to dismiss the identical claims brought by Plaintiff DNS Auto
25  Glass Shop, LLC in a separate action entitled *DNS Auto Glass Shop, LLC v. Safeco Ins.*
    *Co. of Am.,* Case No. CV2018-096793. Because the claims asserted against Safeco in both
26  of these cases are virtually identical, and therefore, Safeco's Motions to Dismiss are
    substantively the same, Safeco is filing a separate Motion to Consolidate for the limited

8816971_1

1   Memorandum of Points and Authorities and the entire Court record.

2   <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

3   **I.   INTRODUCTION AND FACTUAL BACKGROUND**

4   Plaintiff Right at Home, LLC ("Plaintiff") alleges that from October 31, 2017

5   through April 30, 2018, it replaced and installed glass on the vehicles of 60 insureds who

6   had automobile insurance policies with glass coverage through Safeco. *See* Complaint, ¶¶

7   10, 15.  For replacement and installation of the glass, Plaintiff alleges that it procured

8   assignments from the insureds for the right to collect insurance proceeds under their

9   policies with Safeco.  *Id.* at ¶¶ 11, 16.  Although Plaintiff alleges that it "procured

10  assignments," it has not attached a copy of the assignment agreement to the Complaint,

11  nor has it recited the language of the assignment in the Complaint.  Instead, the Complaint

12  simply alleges that assignments were "procured." *Id.* at ¶ 16.[2]

13  Pursuant to the alleged assignment, Plaintiff alleges that it submitted claims to

14  Safeco for total reimbursement on all 60 claims in the amount of $50,015.55, of which

15  Safeco paid $21,487.92.  *Id.* at ¶¶ 17-19.  According to the Complaint, Plaintiff, as

16  assignee, stepped into the shoes of the 60 insureds and is therefore entitled to all of the

17  insureds' rights under the respective policies, including suing Safeco for the additional

18  amounts of money Plaintiff claims is still owed.  *Id.* at ¶ 20.  As the alleged assignee,

19  Plaintiff is asserting claims for breach of contract, breach of the duty of good faith and fair

20  dealing, and unjust enrichment against Safeco.  *Id.* at ¶¶ 25-12 [sic 38].  With respect to

21

22  purpose of seeking to have one judge decide the Motions to Dismiss.  As the DNS Auto
23  Glass Shop, LLC case was filed first, Safeco will request that the Motions to Dismiss be
    decided by Judge Palmer in that case.
    [2] Undersigned counsel has repeatedly asked Plaintiff's counsel to provide a sample of the
24  assignment at issue in this case.  This morning, Plaintiff's counsel finally provided an
    unsigned invoice from Right at Home, LLC that contains assignment language at the
25  bottom in fine print and a Right at Home work order that purportedly contains assignment
    language, but that language is completely illegible.  Further, the Right at Home work
26  order has a signature, but it is not clear if the document would be signed by the insured.

THE CAVANAGH LAW FIRM, P.A.
LAW OFFICES
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

the breach of contract claim, Plaintiff alleges that it is entitled to receive the outstanding balance of $28,527.13 from Safeco, and that Safeco's refusal to pay is a breach of its obligations under the insurance policies. *Id.* at ¶¶ 21-24. Regarding Plaintiff's bad faith claim, Plaintiff alleges that Safeco knew or should have known that its conduct was inexcusable and did not comport with the standards of good faith and fair dealing. *Id.* at ¶ 7 [sic 33]. Finally, in support of its unjust enrichment claim, Plaintiff alleges that Safeco was unjustly enriched and Plaintiff unjustly impoverished for the valuable consideration of Plaintiff's value of replacing and installing the glass for which Safeco agreed to but did not pay in accordance with the terms of the contract. *Id.* at ¶ 11 [sic 37]. Plaintiff is seeking compensatory, incidental, and consequential damages as well as attorneys' fees and interest. *Id.* at 8:2-11.

The standard automobile policy issued by Safeco contains the following appraisal language:

> APPRAISAL
> A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:
> 1. Pay its chosen appraiser; and
> 2. Bear the expenses of the appraisal and umpire equally.
> B. We do not waive any of our rights under this policy by agreeing to an appraisal.

*See* **Exhibit 1**, at 16.[3]   Plaintiff attached as Exhibit A to its Complaint, a spreadsheet

---

[3] For purposes of a Motion to Dismiss, the Court may consider a document that is not attached to the Complaint if the document forms the basis of the plaintiff's claim, which is the case here with Safeco's automobile policy since Plaintiff is suing for alleged breach of that policy. *See Young v. Rose*, 230 Ariz. 433, 438 (App. 2012).

THE CAVANAGH LAW FIRM, P.A.
LAW OFFICES
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

LAW OFFICES
THE CAVANAGH LAW FIRM, P.A.
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

1    listing information on the 60 insureds.  *See* Complaint at Exhibit A.  In Column W, there

2    is a note listed for nearly all 60 insureds stating "sent to appraisal" along with a

3    corresponding date.[4]  *Id.* Therefore, Plaintiff's own exhibit to its Complaint states on its

4    face that the subject claims have gone to appraisal. Plaintiff's counsel has also agreed that

5    any claims that have gone through the appraisal process should not be part of this lawsuit.[5]

6    **II.    LEGAL ARGUMENT**

7        **A.    Plaintiff's Complaint Fails As A Matter Of Law For Failing To Have A Valid Assignment**

8        Plaintiff lacks standing to bring suit against Safeco, and therefore, the entire

9    Complaint must be dismissed pursuant to Ariz. R. Civ. P. 12(b)(1) for lack of subject

10   matter jurisdiction.  In order for an assignee to have standing to bring suit, it "must

11   provide proof that an assignment occurred."  *Brown v. Bank of America, N.A.*, 660

12   Fed.Appx. 506, 509 (9th Cir. 2016).  Thus, "[b]ecuase a court's subject matter jurisdiction

13   turns on whether the plaintiff has standing, a plaintiff must 'present affidavits or any other

14   evidence necessary to satisfy its burden of establishing that the court, in fact, possesses

15   subject matter jurisdiction.'"  *Id.* Here, like the plaintiff in *Brown,* Plaintiff has "not

16   alleged any facts—or provide[d] any exhibits with [its Complaint]—to support [its] bald

17   assertion," that it procured an assignment.  *Id.* Instead, Plaintiff has simply alleged that it

18   "procured" an assignment, but when deciding whether a plaintiff has standing to bring

19

20   [4] The spreadsheet also includes a column with the heading of "sent to app," and every row includes the term "yes."  *See* Exhibit A to Plaintiff's Complaint.  Plaintiff's counsel has

21   informed undersigned that he believes that "sent to app" is an internal code used by Plaintiff and that none of the claims actually went through the appraisal process, although

22   he has not answered undersigned's question about what the column "sent to appraisal" with the corresponding dates means.

23   [5] Undersigned counsel has met and conferred with Plaintiff's counsel at length on this issue, and it was during these discussions that Plaintiff's counsel indicated his agreement that any claims that have been resolved through appraisal should not be in this lawsuit.

24   *See* Certificate of Conferral, filed contemporaneously herewith. However, Plaintiff's counsel has refused to provide an explanation of the spreadsheet that is attached to his

25   Complaint in support of his claims; rather, he has simply asserted, without explanation, that none of the claims have actually gone through appraisal even though the spreadsheet

26   indicates they have.

1   suit, this Court is not required to accept the truth of legal conclusions cast in the form of

2   factual allegations. *See We Are Am./Somos Am., Coal. of Arizona v. Maricopa County Bd.*

3   *of Supervisors*, 809 F. Supp. 2d 1084, 1090 (D. Ariz. 2011).  Because Plaintiff has not

4   established that it has a valid assignment with all 60 insureds, and therefore standing to

5   bring this suit, the entire Complaint must be dismissed as a matter of law.

6          Standing is a "species of subject matter jurisdiction," and therefore, is an issue to

7   be decided in a Rule 12(b)(1) motion to dismiss. *See We Are Am./Somos Am., Coal. of*

8   *Arizona*, 809 F. Supp. 2d at 1089 (*citing Chandler v. State Farm Mut. Auto. Ins. Co.*, 598

9   F.3d 1115, 1122 (9th Cir.2010)).[6] "In every case, the issue of standing is a threshold

10  determination of 'whether the litigant is entitled to have the court decide the merits of the

11  dispute or of particular issues.'" *Id.* at 1090 (internal citation omitted). "Simply put,

12  standing 'is about who is allowed to have their case heard in court[,] ... not about who

13  wins the lawsuit [.]'" *Id.* (internal citation omitted).

14         Here, because Plaintiff is not a party to the insurance contract, and therefore lacks

15  privity of contract with Safeco, Plaintiff only has standing to bring its claims if a valid

16  assignment agreement exists, and even then, as discussed below, only certain claims are

17  assignable under Arizona law.   *See Goodman v. Physical Res. Eng'g, Inc.*, 229 Ariz. 25,

18  30, ¶ 16 (App. 2011) ("[P]rivity of contract must exist before a party may seek to enforce

19  ───────────────────
    [6] Despite differences between federal and state standing requirements, Arizona courts
20  "have previously found federal case law instructive." *Fernandez v. Takata Seat Belts,*
    *Inc.*, 210 Ariz. 138, 140 (App. 2005). Although Arizona does not have a case or
21  controversy requirement to establish standing, "Arizona courts have articulated a
    'prudential' component of standing as a matter of judicial restraint to ensure that the
22  judicial branch does not impermissibly intrude on the powers of the other branches of
    government under our separation of powers doctrine." *Bennett v. Napolitano*, 206 Ariz.
23  520, 525, ¶ 19, 81 P.3d 311, 316 (2003). Prudential principles bear a "close relationship to
24  the policies reflected in the Art. III requirement of actual or threatened injury amenable to
    judicial remedy." *Valley Forge Christian Coll. V. Ams. United for Separation of Church*
25  *and State, Inc.*, 454 U.S. 464, 475 (1982).
26

THE CAVANAGH LAW FIRM, P.A.
LAW OFFICES
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

LAW OFFICES
THE CAVANAGH LAW FIRM, P.A.
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

1   a contract."); *see also Stratton v. Inspiration Consol. Copper Co.*, 140 Ariz. 528, 531

2   (App. 1984) (third party without privity of contract cannot seek to enforce the contract).

3   The requirement of privity and standing are particularly important in the bad faith

4   context. "It is well established that a third-party claimant, a stranger to the contract,

5   cannot sue the insurer for tortious breach of the duty of good faith." *Leal v. Allstate Ins.*

6   *Co.*, 199 Ariz. 250, 254, ¶ 21 (App. 2000); *Hayden Bus. Ctr. Condominiums Ass'n v.*

7   *Pegasus Dev. Corp.*, 209 Ariz. 511, 515, ¶ 21 (App. 2005) ("We held that insurance bad

8   faith derives from an insurance contract and 'a stranger to the contract' cannot bring an

9   action under it absent an assignment."). Arizona prohibits direct actions by third parties

10  against insurers without the benefit of an assignment in these settings because there is no

11  injury to plaintiff from the insurer's alleged exercise of bad faith and the injured plaintiff

12  is a stranger to the fiduciary relationship between the insured and his insurer. *Ring v.*

13  *State Farm Mut. Auto. Ins. Co.*, 147 Ariz. 32, 35 (App. 1985) ("It is clear in Arizona that a

14  judgment creditor must obtain an assignment of the insured's rights before proceeding

15  directly against the insurer for liability in excess of the policy limits.").

16  Plaintiff's sole allegation that it "procured" an assignment, without any evidence of

17  the existence of 60 actual executed assignment agreements is insufficient to establish

18  standing. *See Brown*, 660 Fed.Appx. at 509 (holding that plaintiff's "standing is entirely

19  dependent on a valid assignment, therefore, [the plaintiff's] failure to provide proof of

20  such is fatal to all of his claims."). Notably absent from the Complaint is a single copy of

21  one of Plaintiff's 60 assignment agreements, nor has Plaintiff cited to the applicable

22  language of the assignment in the Complaint that would permit it to sue for breach of

23  contract and bad faith. Thus, because Plaintiff has not satisfied its burden on standing, the

24  Complaint should be dismissed for lack of subject matter jurisdiction.[7]

25

26  _____
[7] As noted above, on the date of this filing, Plaintiff's counsel provided a copy of a Right
at Home, LLC invoice that contains assignment language at the bottom in fine print, but

**B.   Plaintiff's Breach Of Contract Claim Must Be Dismissed For Being Subject To Appraisal And Defendant Invoking Its Right To Appraisal**

To the extent that Plaintiff can satisfy its burden of proving that it has standing to sue on the insurance agreement at issue in this case, its rights as an assignee are those under the insurance agreement, which call for appraisal of this dispute. Per the terms of the insurance contract, Plaintiff is required to resolve this dispute through appraisal, and this Court is without subject matter jurisdiction until the contractual appraisal process is complete. Accordingly, this lawsuit should be dismissed.

"Appraisal clauses are commonly found in homeowners, automobile, and property policies, and they provide a means to resolve disputes about the amount of loss for a covered claim." *Pounds v. Liberty Lloyds of Texas Ins. Co.*, 528 S.W.3d 222, 226 (Tex. App. 2017). "Appraisals can provide a less expensive, more efficient alternative to litigation, and . . . they should generally go forward without preemptive intervention by the courts." *In re Universal Underwriters of Texas Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011) (court granted insurance company's motion to compel appraisal). "The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on an insurance contract." *Pound*, 528 S.W.3d at 228; *U.S. Fid. & Guar. Co. v. Ziegler*, 771 So. 2d 1284, 1285 (Fla. Dist. Ct. App. 2000) (remanding case to require insureds to follow appraisal policy conditions following filing of petition to compel appraisal). Here, the policies at issue contain an appraisal provision that permits either party to invoke its right to appraisal to resolve a dispute related to the amount of the loss. Accordingly, Safeco invokes that right, and therefore, any claims that have not gone through the appraisal process must be dismissed with prejudice so that the dispute over value of the loss may be

---

that invoice is not signed. Plaintiff's counsel also provided a Right at Home, LLC work order that does appear to be signed, but any assignment language is not legible and it is not clear whether or not it is the insured who signed the work order. These documents do not satisfy Plaintiff's burden of establishing that it has standing to sue on breach of contract and bad faith on a contract to which it is not a party.

LAW OFFICES
THE CAVANAGH LAW FIRM, P.A.
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

1    appropriately resolved in an appraisal proceeding.

2           Courts have held that even where there has been an assignment of the insurance

3    loss wherein the assignee brings a lawsuit, the appraisal clause should be invoked when

4    the parties disagree as to the amount of the loss. *See Certified Priority Restoration v.*

5    *State Farm Florida Ins. Co.*, 191 So. 3d 961, 962 (Fla. Dist. Ct. App. 2016) (court

6    affirming trial court order granting insurance company's motion to compel appraisal with

7    an assignee); *Reynolds Ventures, Inc.*, 2018 WL 4215947, at *4 (M.D. Fla. Sept. 5, 2018)

8    (court granted insurance company's motion to compel appraisal following filing of

9    lawsuit by third-party who performed repairs subject to a post-loss assignment).

10          In *Morgan*, a case directly on point, an insured executed a post-loss assignment of

11   insurance benefits to a third party that performed repairs. *See Morgan v. Americas Ins.*

12   *Co.*, 2017 WL 6211043, at *1 (E.D. La. July 6, 2017).   The third party sought payment

13   under the policy and filed a lawsuit for recovery of the insurance benefits for the amount

14   of the repair.  *Id.*  The court held that the third party, as assignee, steps into the shoes of

15   the assignor under the policy and "must comply with the terms and conditions of the

16   policy, including the appraisal provision." *Id.* at *2.   The appraisal provisions were

17   enforceable even though the appraisal was sought after the repairs were completed and the

18   lawsuit had commenced:

19              Clearly, Defendant disputes whether the repairs made by the
                Plaintiffs constitute "reasonable" repairs covered under the
20              policy. The terms of the policy allow for appraisal in the event
                of disagreement regarding the amount of the loss. Plaintiffs'
21              decision to unilaterally proceed with repairs does not deprive
                either party of this right.
22

23   *Id.* Thus, the court granted the insurance company's motion to compel appraisal and the

24   case was subsequently dismissed with prejudice. *Id.*; *Morgan v. Americas Ins. Co.*, 2018

25   WL 1419234, at *3 (E.D. La. Mar. 22, 2018).

26

LAW OFFICES
THE CAVANAGH LAW FIRM, P.A.
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

1    Similarly, other courts have addressed appraisal provisions and have compelled

2    appraisal under similar circumstances. *See Pound*, 528 S.W.3d at 227 (holding court did

3    not abuse its discretion when it compelled appraisal). In *Preferred Mut. Ins. Co.*, the

4    insured and insurer disagreed over the value of storm damage, and like the Plaintiff here,

5    the insureds filed a lawsuit prematurely. *Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d

6    1101, 1102 (Fla. Dist. Ct. App. 1994). The insurance company filed a motion to dismiss

7    and to compel appraisal as the contractually-required remedy. *Id.* at 1102. The Court

8    held that appraisal provisions are deemed to be conditions precedent to recovery, and

9    therefore, it reversed the trial court's order with instructions that it compel appraisal. *Id.* at

10   1103.

11   Appraisal is the universal remedy for property insurers and their insureds to resolve

12   value disputes over covered claims. *In re Public Serv. Mut. Ins. Co.*, 2013 WL 692441

13   (Tex. App. 2013) (holding trial court abused its discretion when it denied motion to

14   compel appraisal). Appraisal provisions "mandate[] that both the insured and the insurer

15   submit to appraisal upon the demand of either, thereby assuring that the insured as well as

16   the insurer has a contractual right to a prompt and inexpensive determination of the

17   amount of loss." *Aetna Cas. & Sur. Co. v. Ins. Com'r*, 293 Md. 409, 420–21 (1982); *see

18   also In re Cypress Texas Lloyds*, 419 S.W.3d 443, 445 (Tex. App. 2012) (finding that the

19   trial court order denying insurance company's motion to compel appraisal must be

20   vacated and the appraisal policy provisions enforced); *Johnson v. State Farm Lloyds*, 204

21   S.W.3d 897, 903 (Tex. App. 2006), aff'd, 290 S.W.3d 886 (Tex. 2009) (granting motion

22   for summary judgment seeking an order compelling appraisal).

23   Appraisal provisions are similar to arbitration provisions, which Arizona court

24   have held are enforceable and favored by public policy. *See Wilson v. Pate*, 17 Ariz. App.

25   461, 462 (1972) ("The parties to a contract are free to modify common law remedies and

26   we must assume that such changes were made by the mutual agreement of both parties.").

LAW OFFICES
THE CAVANAGH LAW FIRM, P.A.
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

8816971_1                                    9

1    "While appraisals are generally less formal than arbitrations, both provide a contractual
2    method for settling questions in a less complicated and expensive manner than through
3    court adjudication." *Hirt v. Hervey*, 118 Ariz. 543, 545 (App. 1978) (finding that
4    appraisal decisions have the same finality as arbitration decisions); *Meineke v. Twin City*
5    *Fire Ins. Co.*, 181 Ariz. 576, 580 (App. 1994) (court applying "principles of arbitration
6    law to this dispute regarding an insurance policy appraisal clause").   In the arbitration
7    setting, Arizona courts have similarly dismissed lawsuits and compelled arbitration. *See*
8    *Sec. Alarm Fin. Enterprises, L.P. v. Fuller*, 242 Ariz. 512, 518 (App. 2017) (reversing
9    trial court order denying motion to dismiss and motion to compel arbitration); *Allstate*
10   *Prop. & Cas. Ins. Co. v. Watts Water Techs., Inc.*, 244 Ariz. 253, 259 (App. 2018), review
11   denied (Aug. 29, 2018) (reversing trial court ruling denying motions to dismiss and
12   compel arbitration).

13          In this case, Plaintiff attached a spreadsheet to the Complaint that appears to
14   indicate that all of the 60 insured's claims have already been sent to appraisal, even
15   including specific dates on when the claims were sent to appraisal.  Plaintiff has agreed
16   that any claims that were sent to appraisal are subject to dismissal.  Assuming, however,
17   that the spreadsheet indicates something other than appraisal and that none of these claims
18   have been sent to appraisal (as Plaintiff asserts), and also assuming *arguendo* that Plaintiff
19   has actually procured a valid assignment agreement from the insureds, then pursuant to
20   the appraisal provision of the policy, Safeco is entitled to invoke the appraisal process and
21   Plaintiff's dispute over the amount of loss is subject to appraisal.  Safeco has a contractual
22   right to engage in an inexpensive determination of the loss, regardless of Plaintiff's
23   unilateral decision to file lawsuit without invoking the more appropriate appraisal process.
24   Appraisal is treated as a condition precedent to recovery and Plaintiff, as assignee, must
25   comply with the terms and conditions of the appraisal provision.  Therefore, Plaintiff is
26   bound by the appraisal terms of the policy and must honor a demand for appraisal from

LAW OFFICES
THE CAVANAGH LAW FIRM, P.A.
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

1  Safeco for those claims that are not already in the appraisal process, and this Court lacks
2  subject matter jurisdiction over this case until that process is complete.

3      **C.    Plaintiff's Bad Faith Claim Is Subject To Dismissal Because Bad Faith
4            Claims Are Generally Not Assignable And No Exception Applies**

5          Assuming that Plaintiff is a valid assignee and has standing to bring claims against
6  Safeco, it still may not assert a claim of tortious bad faith against Safeco because the tort
7  of insurance bad faith belongs only to the insured and is not assignable.

8          In Arizona, the general rule is that damages arising from certain torts are not
9  assignable. *See Ross v. Superior Court, In & For Maricopa County*, 128 Ariz. 301, 302
10 (1981); *K. W. Dart Truck Co. v. Noble*, 116 Ariz. 9, 11 (1977) ("to change the rule against
11 the assignment of tort claims would lift the lid on a pandora's box crammed with both
12 practical and legal problems"); *Harleysville Mut. Ins. Co. v. Lea*, 2 Ariz. App. 538, 542
13 (1966) ("allowing the subrogation or assignment of a cause of action for personal injuries
14 is so fraught with possibilities, that the rule in Arizona against assignment should remain
15 the same until changed by the legislature").

16         In *Botma*, the Arizona Court of Appeals recognized that torts that arise out of a
17 uniquely personal relationship, in particular, may not be assigned:

18
19     [T]he relationship between attorney and client is of a uniquely personal
       nature, giving rise to a "fiduciary relation of the very highest character" and
       that considerations of public policy require that actions arising out of such a
20     relationship not be relegated to the market place and converted to a
       commodity to be exploited and transferred to economic bidders.
21

22 *Botma v. Huser*, 202 Ariz. 14, 17, ¶ 11 (App. 2002) (*quoting Schroeder v. Hudgins*, 142
23 Ariz. 395, 399 (App. 1984). Arizona courts have held similarly regarding the prohibition
24 of assignment of other types of torts that are personal in nature. For example, in *Martinez*
25 *v. Green*, the Arizona Court of Appeals recognized that "the nature of the claim
26 determines whether it can be assigned," and held that because claims under the Telephone

LAW OFFICES
THE CAVANAGH LAW FIRM, P.A.
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

1  Consumer Protection Act are essentially personal, invasion of privacy torts, they cannot

2  be assigned. 212 Ariz. 320, 323, ¶ 13 (App. 2006); *see also PPG Indus., Inc. v.*

3  *JMB/Houston Centers Partners Ltd.*, 146 S.W.3d 79, 92 (Tex. 2004) (holding that

4  because of "the personal and punitive nature of both DTPA claims and DTPA damages,

5  and the risks to the adversarial process, . . . DTPA claims generally cannot be assigned by

6  an aggrieved consumer to someone else.").

7      "Ever since the tort of bad faith was first recognized in Arizona, ... it has been

8  consistently viewed as limited by the contractual relationship between the plaintiff and the

9  defendant insurer." *Fobes v. Blue Cross & Blue Shield*, 176 Ariz. 407, 409 (Ariz. App.

10  1993) (*citing Deese v. State Farm Mut. Auto. Ins. Co.*, 172 Ariz. 504 (Ariz. 1992).

11  Indeed, Arizona law only recognizes the tort of insurance bad faith due to the special

12  relationship of an insurer to its insured. *See Noble v. Nat'l Am. Life Ins. Co.*, 128 Ariz.

13  188, 189–90, 624 P.2d 866, 867–68 (1981) ("The special nature of an insurance contract

14  has been recognized by courts and legislatures for many years. . . . An insurance policy is

15  not obtained for commercial advantage; it is obtained as protection against calamity. . . .

16  Often the insured is in an especially vulnerable economic position when such a casualty

17  loss occurs. . . . We have determined that it is reasonable to conclude that there is a legal

18  duty implied in an insurance contract that the insurance company must act in good faith in

19  dealing with its insured on a claim, and a violation of that duty of good faith is a tort.");

20  *see also Enyart v. Transamerica Ins. Co.*, 195 Ariz. 71, 76 (App. 1998) ("In Arizona, a

21  party may bring a tort action for breach of an implied covenant if there is a 'special

22  relationship arising from elements of public interest, adhesion, and fiduciary

23  responsibility.'"). As such, generally, bad faith claims are personal tort claims that are not

24  assignable.

25      The one narrow exception to the assignability of bad faith tort claims that Arizona

26  courts have recognized is an insured's right to protect itself from harm in third-party

LAW OFFICES
THE CAVANAGH LAW FIRM, P.A.
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

1    litigation.  In Arizona, an insured is permitted to assign a bad faith claim under a liability

2    insurance policy to the party suing the insured solely to protect the insured from "the

3    sharp thrust of personal liability" in a tort lawsuit filed against the insured. *See United*

4    *Servs. Auto. Assn'n v. Morris*, 154 Ariz. 113, 118 (Ariz. 1987); *Damron v. Sledge*, 105

5    Ariz. 151 (Ariz. 1969); *see Clearwater v. State Farm Mut. Auto. Ins. Co.*, 161 Ariz. 590,

6    593-94 (App. 1989).  This narrow exception has only been applied in the context of an

7    insured seeking liability coverage to defend and indemnify against third-party tort

8    litigation.  In these unique circumstances, Arizona law permits an insured to assign its bad

9    faith claim in order to avoid exposure to extensive personal liability to the plaintiff in

10   situations where the insurer has failed to defend, indemnify or agree to a settlement within

11   policy limits when the exposure to the insured is in excess of the policy limits. *See, e.g.*

12   *Morris*, 154 Ariz. at 118-121.

13          Here, there is no valid basis for an assignment of a bad faith claim because the

14   insureds are not in harm's way.  To the contrary, the insureds have been provided with

15   benefits pursuant to their insurance contract (a new windshield for which they did not

16   have to pay), and their insurer (Safeco) has not placed them in any economic peril.  In

17   other words, the insureds are not in a position of having to protect themselves from

18   liability exposure.  In fact, the insureds themselves would have no claim for bad faith

19   because they have timely received all of the benefits to which they are entitled under the

20   insurance policy.  Thus, because there is no valid basis for assignment of a bad faith

21   claim, which by its very nature is personal to only the insured, Plaintiff has no right to the

22   insureds' bad faith claims. *See Page v. Allstate Ins. Co.*, 126 Ariz. 258, 258 (App. 1980)

23   (holding that an insurer's duty of good faith "is intended to benefit the insured, not the

24   injured claimant," and therefore, a judgment creditor had no standing to bring a bad faith

25   claim against a judgment debtor's liability insurer).  Arizona courts have uniformly held

26   that third parties to a contract have no rights of bad faith. *See Fobes v. Blue Cross and*

LAW OFFICES
THE CAVANAGH LAW FIRM, P.A.
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

1    *Blue Shield*, 176 Ariz. 407, 861 P.2d 692 (App. 1993); *see also Leal v. Allstate Insurance*

2    *Company*, 199 Ariz. 250, 17 P.3d 95 (App. 2000).

3           Because the tort of insurance bad faith arises solely from the special relationship

4    between an insurer and its insured, pursuant to well-established Arizona law that prohibits

5    the assignment of torts, particularly those that are uniquely personal, Plaintiff's bad faith

6    claim must be dismissed as a matter of law.

7           **D.    Plaintiff Cannot Recover For Unjust Enrichment For Contract
              Damages Where There Is An Adequate Remedy At Law**

8           In Arizona, "if there is a specific contract which governs the relationship of the

9    parties, the doctrine of unjust enrichment has no application." *Trustmark Ins. Co. v. Bank*

10   *One, Arizona, NA,* 202 Ariz. 535, 542, ¶ 34 (App. 2002), as corrected (June 19, 2002)

11   (holding that an unjust enrichment claim fails where there is an adequate remedy at law

12   such as a breach of contract claim); *Brooks v. Valley Nat. Bank*, 113 Ariz. 169, 174

13   (1976); *Ashton Co., Inc., Contractors & Engineers v. State*, 9 Ariz. App. 564, 570 (1969).

14   Here, Plaintiff has sued for breach of contract, and even though there is a dispute as to

15   whether Plaintiff has standing to bring this suit, there is no dispute that the claim (if

16   cognizable) arises out of existing insurance contracts.

17          Arizona courts have upheld motions to dismiss unjust enrichment claims where

18   there is a specific contract governing the relationship. *See Johnson v. Am. Nat. Ins. Co.*,

19   126 Ariz. 219, 222 (App. 1980) (trial court granting of motion to dismiss unjust

20   enrichment claim was proper where the theory of recovery was based on recovery of

21   payments pursuant to a loan agreement); *Kaman Aerospace v. Arizona Bd. of Regents*, 217

22   Ariz. 148, 151 at n.3 (App. 2007) (dismissing plaintiff's unjust enrichment claim where

23   plaintiff was pursuing breach of contract claim).

24          In this case, Plaintiff is asserting an unjust enrichment claim for the purpose of

25   recovering the value of the replacement and installation of the glass that Safeco did not

26

LAW OFFICES
THE CAVANAGH LAW FIRM, P.A.
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

1  pay "in accordance with the terms of the contract." *See* Complaint at ¶ 11 [sic 37].  In

2  other words, Plaintiff is seeking to recover sums believed owed under a specific contract

3  allegedly governing their relationship, *i.e.* the insurance policy.   Plaintiff's unjust

4  enrichment claim is seeking the same relief sought under the breach of contract claim and

5  Safeco does not contest that the insurance policies are valid, existing contracts that are

6  central to the allegations in the Complaint.  As such, Plaintiff's unjust enrichment claim

7  has no application and fails as a matter of law because an adequate remedy exists in

8  Plaintiff's breach of contract claim.

9  **III.   CONCLUSION**

10  Based on the foregoing, Safeco respectfully requests the Court dismiss Plaintiff's

11  Complaint in its entirety, enter an order compelling appraisal, for an award of attorneys'

12  fees pursuant to A.R.S. § 12-341.01, and for all other relief the Court deems just and

13  proper.

14  DATED this 3rd day of December, 2018.

15                              THE CAVANAGH LAW FIRM, P.A.

16

17                              By: s/ Cassandra V. Meyer
                                   Cassandra V. Meyer
                                   Karen Stafford
18                                 Karen N. Wohlgemuth
                                   Attorneys for Defendant

19

20  ORIGINAL filed on AZTurboCourt
    this 3rd day of December, 2018 with
    a copy of the same mailed to:
21

22  Brad A. Denton
    Sterling R. Peterson
    Denton Peterson, PC
23  1930 N. Arboleda Road, Suite 200
    Mesa, Arizona 85213
24  Attorneys for Plaintiff

25

26   s/ Karen Stafford

LAW OFFICES
THE CAVANAGH LAW FIRM, P.A.
1850 NORTH CENTRAL AVENUE, SUITE 2400
PHOENIX, ARIZONA 85004-4527
(602) 322-4000

# EXHIBIT 1

REPRINTED FROM THE FORMS LIBRARY



A Liberty Mutual Company

# ARIZONA PERSONAL AUTO POLICY

SAFECO INSURANCE COMPANY OF AMERICA
Home Office: 62 Maple Avenue, Keene, New Hampshire 03431

(A stock insurance company.)

## READY REFERENCE TO YOUR AUTO POLICY

|  | Beginning On Page |
|---|---|
| **AGREEMENT** | 1 |
| **DEFINITIONS** | 1 |
| **PART A — LIABILITY COVERAGE** | 3 |
| Insuring Agreement | |
| Supplementary Payments | |
| Exclusions | |
| Limit of Liability | |
| Out of State Coverage | |
| Financial Responsibility | |
| Other Insurance | |
| **PART B — MEDICAL PAYMENTS COVERAGE** | 7 |
| Insuring Agreement | |
| Exclusions | |
| Limit of Liability | |
| Other Insurance | |
| **PART C — UNINSURED MOTORISTS COVERAGE** | 9 |
| Insuring Agreement | |
| Exclusions | |
| Limit of Liability | |
| Other Insurance | |
| Arbitration | |
| Additional Duty | |
| **PART D — COVERAGE FOR DAMAGE TO YOUR AUTO** | 11 |
| Insuring Agreement | |
| Transportation Expenses | |
| Exclusions | |
| Limit of Liability | |
| Payment of Loss | |
| No Benefit to Bailee | |
| Other Sources of Recovery | |
| Appraisal | |
| **PART E — DUTIES AFTER AN ACCIDENT OR LOSS** | 17 |
| **PART F — GENERAL PROVISIONS** | 17 |
| Policy Period and Territory | |
| Changes | |
| Termination | |
| Two or More Autos Insured; Two or More Auto Policies | |

SA-1852/AZEP 12/16

REPRODUCED FROM THE FORMS LIBRARY

**ADDITIONAL COVERAGES** 22

Underinsured Motorists Coverage
Roadside Assistance Coverage
Loss of Use Coverage
Full Safety Glass Coverage
#######################################
#######################################
#######################################
#######################################
#######################################
#######################################
#######################################
#######################################
#######################################
#######################################

## AGREEMENT

In return for your payment of all premiums, and in reliance upon the statements in the application we agree to insure you subject to the terms, conditions and limitations of this policy. We will insure you for the coverages and limits shown on the Declarations. Your policy consists of the policy contract, Declarations and endorsements applicable to the policy.

## DEFINITIONS

A.  Throughout this policy, "you" and "your" refer to:

1.  The "named insured" shown in the Declarations;

2.  The spouse, if a resident of the same household; or

3.  The **domestic partner**, if a resident of the same household;

    **"Domestic partner"** means a person living as a continuing partner with you and:

    (a) is at least 18 years of age and competent to contract;

    (b) is not a relative; and

    (c) shares with you the responsibility for each other's welfare, evidence of which includes:

        (1) the sharing in domestic responsebilities for the maintenance of the household; or

        (2) having joint financial obligations, resources, or assets; or

        (3) one with whom you have made a declaration of domestic partnership or similar declaration with an employer or government entity.

    **Domestic partner** does not include more than one person, a roommate whether sharing expenses equally or not, or one who pays rent to the named insured.

B.  "We", "us" and "our" refer to the Company, as shown in the Declarations providing this insurance.

C.  For purposes of this policy, a private passenger auto shall be deemed to be owned by a person if leased:

1.  Under a written agreement to that person; and

2.  For a continuous period of at least six months.

D.  Throughout the policy, **"minimum limits"** refers to the following limits of liability required by Arizona law to be provided under a policy of automobile liability insurance:

1.  $15,000 for each person, subject to $30,000 for each accident, with respect to **bodily injury**;

2.  $10,000 for each accident with respect to **property damage**.

Other words and phrases are defined. They are in bold type when used.

E.  **"Bodily injury"** means bodily harm, sickness or disease, including death that results.

F.  **"Business"** includes trade, profession or occupation.

G.  **"Family member"** means a person related to you by blood, marriage, domestic partnership or adoption who is a resident of your household. This includes a ward or foster child who is a resident of your household.

H.  **"Fungi"** means any type or form of fungus, including yeast, mold or mildew, blight or mushroom and any mycotoxins, spore, scents or other substances, products or byproducts produced, released by or arising out of **fungi**, including growth, proliferation or spread of **fungi** or the current or past presence of **fungi**. However, this definition does not include any **fungi** intended by the **insured** for consumption.

I.  **"Occupying"** means in; upon; or getting in, on, out or off.

J.  **"Property damage"** means physical injury or destruction of tangible property including loss of use.

K.  **"Punitive or exemplary damages"** include damages which are awarded to punish or deter wrongful conduct, to set an example, to fine, penalize or impose a statutory penalty, and damages which are awarded for any purpose other than as compensatory damages for **bodily injury** or **property damage**.

L.  **"Trailer"** means a vehicle designed to be pulled by a:

1.  Private passenger auto; or

SA-1852/AZEP 12/16                                    - 1 -

2. Pickup, van or motorhome.

It also means a recreational camping vehicle, a farm wagon or farm implement while towed by a vehicle listed in **L.1.** or **L.2.** above.

**M.** **"Transportation network platform"** means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

**N.** **"Your covered auto"** means:

1. Any vehicle shown in the Declarations.

2. **a.** Any newly acquired vehicle, whether operational or not, on the date you become the owner, subject to conditions for **Newly Acquired Replacement Vehicle** and **Newly Acquired Additional Vehicle** under **N.2.b.** below. Any newly acquired vehicle must be of the following types:

    **(1)** a private passenger auto;

    **(2)** a pickup or van that:

      **(a)** has a Gross Vehicle Weight Rating of 12,000 lbs or less; and

      **(b)** is not used for the delivery or transportation of goods and materials unless such use is:

        **i.** incidental to your **business** of installing, maintaining or repairing furnishings or equipment; or

        **ii.** for farming or ranching; or

    **(3)** a motorhome or **trailer**.

  **b.** A newly acquired vehicle is subject to the following conditions:

    **(1)** **Newly Acquired Replacement Vehicle.** If the vehicle you acquire replaces one shown in the Declarations, the replacement vehicle will have the same coverage as the vehicle it replaced. You must notify us of a newly acquired vehicle which is a replacement vehicle within 30 days of the date of acquisition.

    **(2)** **Newly Acquired Additional Vehicle.** For any newly acquired vehicle that is in addition to any shown in the Declarations coverage shall apply for the first thirty

(30) days after you acquire the vehicle, including the date of acquisition. Coverage shall be the broadest coverage we provide for any vehicle shown in the Declarations. This coverage applies only if:

      **(a)** you acquire the additional vehicle during the policy period shown on the Declarations; and

      **(b)** there is no other insurance policy that provides coverage for the additional vehicle.

      If you wish to add or continue coverage you must ask us to insure the additional vehicle within thirty (30) days after you acquire the additional vehicle. This thirty (30) days of coverage includes the day you acquire the vehicle.

    **(3)** Collision Coverage for a newly acquired vehicle begins on the date that you acquire the vehicle. However, if the Declarations does not indicate that Collision Coverage applies to at least one vehicle, you must ask us to insure the newly acquired vehicle within four (4) days after you acquire it. If a loss occurs during the four (4) days after you acquire the vehicle but before you asked us to insure the newly acquired vehicle, a $500 collision deductible will apply.

    **(4)** Comprehensive Coverage for a newly acquired vehicle begins on the date that you acquire the vehicle. However, if the Declarations does not indicate that Comprehensive Coverage applies to at least one vehicle, you must ask us to insure the newly acquired vehicle within four (4) days after you acquire it. If a loss occurs during the four (4) days after you acquire the vehicle but before you asked us to insure the newly acquired vehicle, a $500 comprehensive deductible will apply.

3. Any auto or **trailer** you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

  **a.** breakdown;

b. repair;

c. servicing;

d. loss; or

e. destruction.

This provision **(N.3.)** does not apply to Coverage for Damage to Your Auto.

## PART A — LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any **family member** for the ownership, maintenance or use of any auto or **trailer**.

2. Any person using **your covered auto** with your express or implied permission.

3. For **your covered auto**, any person or organization but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under **B.1.** and **B.2.** above.

4. For any auto or **trailer**, other than **your covered auto**, any other person or organization but only with respect to legal responsibility for acts or omissions of you or any **family member** for whom coverage is afforded under this Part. This provision **(B.4.)** applies only if the person or organization does not own or hire the auto or **trailer**.

### INTEREST ON JUDGMENTS

We will pay interest on judgments subject to all of the following:

1. Any notice, demand, summons, judgment, or any process has been promptly forwarded to us as required by the policy conditions.

2. We accept the defense or agree to the judgment.

3. We will pay the interest on that part of the judgment that is covered and that does not exceed our applicable limit of liability.

4. We will pay interest that accrues after entry of judgment and before we pay, tender, or deposit in court.

5. If we appeal the judgment, we will pay interest on the entire judgment.

6. Post-judgment interest is in addition to the applicable limit of liability.

7. Where we are required to cover prejudgment interest, it shall be included in the limit of liability and is not an additional amount of insurance.

### SUPPLEMENTARY PAYMENTS

We will pay on behalf of an **insured**:

1. Up to $1,000 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in **bodily injury** or **property damage** covered under this policy. We are not obligated to apply for or furnish such bonds.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend.

3. Up to $250 a day for loss of earnings, but not other income, because of attendance at hearings or trials at our request.

4. Other reasonable expenses incurred at our request.

5. All expenses incurred by an **insured** for first aid to others at the time of the accident, not to exceed $10,000.

### EXCLUSIONS

A. We do not provide Liability Coverage for:

1. Any **insured** who intentionally causes **bodily injury** or **property damage** even if such **bodily injury** or **property damage** is of a different kind or degree than expected or intended, or such **bodily injury** or **property damage** is sustained by a different person or persons than expected or intended.

2. **Property damage** to property owned or being transported by any **insured**.

3. **Property damage** to property:

   a. rented to;

   b. used by; or

   c. in the care of;

   any **insured**.

   This exclusion (**A.3.**) does not apply to **property damage** to a residence or private garage.

4. **Bodily injury** to an employee of any **insured** during the course of employment. This exclusion (**A.4.**) does not apply to **bodily injury** to a domestic employee unless workers compensation benefits are required or available for that domestic employee.

5. Any **insured's** liability arising out of the ownership or operation of a vehicle while it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle. This exclusion (**A.5.**) does not apply to:

   a. a share-the-expense car pool; or

   b. the ownership or operation of a vehicle while it is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN. Section 43-1201(4).

6. Any **insured** using any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**. This exclusion (**A.6.**) does not apply to the ownership or operation of a vehicle while it is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN. Section 43-1201(4).

   This exclusion only applies to the extent that the limits of liability for this coverage exceed the minimum limits required by the Arizona financial responsibility law.

7. a. Any **insured** while employed or otherwise engaged in the **business** of:

      (1) selling;

      (2) repairing;

      (3) servicing;

      (4) storing; or

      (5) parking;

      vehicles designed for use mainly on public highways. This includes road testing and delivery.

   b. This exclusion (**A.7.**) does not apply to the ownership, maintenance or use of **your covered auto** by:

      (1) you;

      (2) any **family member**; or

      (3) any partner, agent or employee of you or any **family member**.

8. Any **insured** maintaining or using any vehicle while that **insured** is employed or otherwise engaged in any **business** (other than farming or ranching) not described in exclusions **A.6.** or **A.7.** This exclusion (**A.8.**) does not apply to the maintenance or use of a:

   a. private passenger auto;

   b. pickup, motorhome or van that:

      (1) you own; or

      (2) you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

         (a) breakdown;

         (b) repair;

         (c) servicing;

         (d) loss; or

         (e) destruction; or

   c. **trailer** used with a vehicle described in **A.8.a.** or **A.8.b.** above.

9. Any **insured** using a vehicle without the express or implied permission of the owner or other person having lawful possession. However, this exclusion does not apply to a **family member** using **your covered auto**.

10. a. **Bodily injury** or **property damage** for which any **insured**:

      (1) is an **insured** under a nuclear energy liability policy; or

      (2) would be an **insured** under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.

b. A nuclear energy liability policy is a policy issued by any of the following or their successors:

    (1) Nuclear Energy Liability Insurance Association;

    (2) Mutual Atomic Energy Liability Underwriters; or

    (3) Nuclear Insurance Association of Canada.

11. **Punitive or exemplary damages** awarded against any **insured**.

12. For **bodily injury** to you or any **family member** to the extent that the limits of liability for this coverage exceed the **minimum limits** required by the Arizona Financial Responsibility Law.

13. **Bodily injury** or **property damage** arising out of the use of **your covered auto** while leased or rented to others. However, this exclusion does not apply to the operation of **your covered auto** by you or a **family member**.

14. **Bodily injury** or **property damage** arising out of a criminal act or omission of the **insured**. This exclusion applies regardless of whether that **insured** is actually charged with, or convicted of, a crime. However, this exclusion **(14.)** does not apply to traffic violations. This exclusion applies in excess of the **minimum limits** specified by the Arizona Financial Responsibility Law.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:

1. a. Any vehicle which:

    (1) has fewer than four wheels;

    (2) is designed mainly for use off public roads; or

    (3) is a vehicle not licensed for use on public roads.

  b. This exclusion does not apply:

    (1) while such vehicle is being used by an **insured** in a medical emergency; or

    (2) to any **trailer**.

2. Any vehicle, other than **your covered auto**, which is:

  a. owned by you; or

  b. furnished or available for your regular use.

3. a. Any vehicle, other than **your covered auto**, which is:

    (1) owned by any **family member** or other person who resides with you; or

    (2) furnished or available for the regular use of any **family member** or other person who resides with you.

  b. However, this exclusion (**B.3.**) does not apply to you while you are maintaining or **occupying** any vehicle which is:

    (1) owned by a **family member** or other person who resides with you; or

    (2) furnished or available for the regular use of a **family member** or other person who resides with you.

4. Any vehicle while it is:

  a. operating on a surface designed or used for racing, except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

  b. participating in a high performance driving or racing instruction course or school; or

  c. preparing for, practicing for, used in, or competing in any prearranged, or organized:

    (1) race activity; or

    (2) speed, performance, stunt, or demolition contest or exhibition on public highways or streets.

This exclusion applies in excess of the **minimum limits** specified by the Arizona Financial Responsibility Law.

## LIMIT OF LIABILITY

A. If the Declarations indicates "per person"/"per accident" coverage applies:

The limit of liability as shown in the Declarations for "each person" for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one auto accident.

Subject to this limit for "each person", the limit of liability shown in the Declarations for "each

accident" for Bodily Injury Liability is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident.

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all **property damage** resulting from any one accident.

This is the most we will pay regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

B. If the Declarations indicate **Combined Single Limit** applies, Paragraph **A.** above is replaced by the following:

The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for all damages resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

We will apply the limit of liability to provide any separate limits required by law for **bodily injury** and **property damage** liability. However, this provision will not change our total limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B or Part C of this policy; or
2. Any Underinsured Motorists Coverage provided by this policy.

D. A vehicle and attached **trailer** are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached **trailer**.

## OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for **bodily injury**

or **property damage** higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required **minimum limits** and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

## FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required.

## OTHER INSURANCE

If there is other applicable liability insurance:

1. Any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance. However, any insurance we provide for a vehicle you do not own will be primary insurance if the vehicle is insured under a policy affording coverage to a named insured engaged in the **business** of:

   a. selling;
   b. repairing;
   c. servicing;
   d. delivering;
   e. testing;
   f. road testing;
   g. parking; or
   h. storing;

   motor vehicles. This applies only if an **insured**:

   a. is operating the vehicle; and
   b. is neither the person engaged in such business nor that person's employee or agent.

2. Any insurance we provide for a vehicle you own shall be excess to that of a person engaged in the **business** of:

   a. selling;
   b. repairing;
   c. servicing;
   d. delivering;
   e. testing;

f.   road testing;

g.   parking; or

h.   storing;

motor vehicles, if the accident occurs while the vehicle is being operated by that person or that person's employee or agent.

**3.**   We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

## PART B — MEDICAL PAYMENTS COVERAGE

### INSURING AGREEMENT

**A.**   We will pay **usual and customary charges** incurred for reasonable and necessary medical and funeral expenses because of **bodily injury**:

1.   Caused by accident; and

2.   Sustained by an **insured**.

We will pay only those expenses incurred for services rendered within three (3) years from the date of the accident.

We have a right to review medical expenses and services to determine if they are reasonable and necessary for the **bodily injury** sustained.

**B.**   "**Insured**" as used in this Part means:

1.   You or any **family member**:

a.   while **occupying**; or

b.   as a pedestrian or bicyclist when struck by;

a motor vehicle designed for use mainly on public roads or a **trailer** of any type.

2.   Any other person while **occupying your covered auto** with your express or implied permission.

3.   Any other person while **occupying**, as a guest, an automobile not owned by you or a **family member**, while being operated by you or a **family member**.

**C.**   "**Usual and customary charges**" as used in this Part mean:

Any amount which we determine represents a customary charge for services in the geographic area in which the service is rendered. To determine whether a charge is customary, we may consider outside sources of information of our choice, including, but not limited to:

1.   Licensed, certified or registered health care professionals;

2.   Medical examinations;

3.   Medical file reviews;

4.   Medical bill review services; or

5.   Computerized data bases.

The **insured** shall not be responsible for payment of any reduction applied by us. If a medical provider disputes an amount paid by us, we will be responsible for resolving such disputes.

### EXCLUSIONS

We do not provide Medical Payments Coverage for any **insured** for **bodily injury**:

1.   Sustained while **occupying** any motorized vehicle having fewer than four wheels.

2.   Sustained while **occupying your covered auto** when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle. This exclusion **(2.)** does not apply:

a.   to a share-the-expense car pool; or

b.   when **your covered auto** is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN Section 43-1201(4).

3.   Sustained while occupying any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**. This exclusion **(3.)** does not apply when **your covered auto** is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN Section 43-1201(4).

4.   Sustained while **occupying** any vehicle located for use as a residence or premises.

5.   Occurring during the course of employment if workers compensation benefits are required or available for the **bodily injury**.

6. Sustained while **occupying**, or when struck by, any vehicle (other than **your covered auto**) which is:

   a. owned by you; or

   b. furnished or available for your regular use.

7. Sustained while **occupying**, or when struck by, any vehicle (other than **your covered auto**) which is:

   a. owned by any **family member** or other person who resides with you; or

   b. furnished or available for the regular use of any **family member** or other person who resides with you.

   However, this exclusion **(7.)** does not apply to you.

8. Sustained while **occupying** a vehicle without the express or implied permission of the owner or other person having lawful possession. However, this exclusion does not apply to a **family member** using **your covered auto**.

9. Sustained while **occupying** a vehicle when it is being used in the **business** of an **insured**. This exclusion **(9.)** does not apply to **bodily injury** sustained while **occupying** a:

   a. private passenger auto;

   b. pickup, van or motorhome that you own; or

   c. **trailer** used with a vehicle described in **a.** or **b.** above.

10. Caused by or as a consequence of:

    a. discharge of a nuclear weapon (even if accidental);

    b. war (declared or undeclared);

    c. civil war;

    d. insurrection; or

    e. rebellion or revolution.

11. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

    a. nuclear reaction;

    b. radiation; or

    c. radioactive contamination.

12. Sustained while **occupying** any vehicle while it is:

    a. operating on a surface designed or used for racing except for an organized and controlled event that is not a speed, performance, stunt or demolition event;

    b. participating in a high performance driving or racing instruction course or school; or

    c. preparing for, practicing for, used in, or competing in any prearranged or organized:

       (1) race activity; or

       (2) speed, performance, stunt or demolition contest or exhibition.

13. Caused by the actual, alleged or threatened presence, growth, proliferation or spread of **fungi** or bacteria.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for this coverage is our maximum limit of liability for each person injured in any one accident. This is the most we will pay regardless of the number of:

   1. **Insureds**;

   2. Claims made;

   3. Vehicles or premiums shown in the Declarations; or

   4. Vehicles involved in the accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A** or Part **C** of this policy.

## OTHER INSURANCE

If there is other applicable auto medical payments insurance available any insurance we provide shall be excess over any other applicable auto medical payments insurance. If more than one policy applies on an excess basis, we will bear our proportionate share with other collectible auto medical payments insurance.

## PART C — UNINSURED MOTORISTS COVERAGE

### INSURING AGREEMENT

A. We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:

1. Sustained by that **insured**; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

We will pay damages under this coverage caused by an accident with an **underinsured motor vehicle** only if **1.** or **2.** below applies:

1. The limits of liability under any applicable bodily injury liability bonds or policies have been exhausted by payment of judgments or settlements; or

2. A tentative settlement has been made between an **insured** and the insurer of the **underinsured motor vehicle** and we:

   a. have been given prompt written notice of such tentative settlement; and

   b. advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

Any judgment for damages arising out of a suit brought without our written consent is not binding on us.

B. "**Insured**" as used in this Part means:

1. You or any **family member**.

2. Any Rated Driver shown on the Declarations other than you or a **family member**.

3. Any other person **occupying your covered auto** with your express or implied permission.

4. Any person entitled to recover damages because of **bodily injury** to which this coverage applies sustained by a person described in **B.1.** or **B.2.** above.

C. "**Uninsured motor vehicle**" means a land motor vehicle or **trailer** of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. To which a bodily injury liability bond or policy applies at the time of the accident if its limit for bodily injury liability is less than the **minimum limits** for bodily injury liability specified by the financial responsibility law of Arizona.

3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in **bodily injury** without hitting:

   a. you or any **family member**;

   b. a vehicle which you or any **family member** are occupying; or

   c. **your covered auto**.

   If there is no physical contact with the hit-and-run vehicle, the facts of the accident must be proved. The person making the claim shall provide corroboration that the unidentified **motor vehicle** caused the accident. Corroboration means any additional and confirming testimony, fact or evidence that strengthens and adds weight or credibility to such person's representation of the accident.

4. To which a bodily injury liability bond or policy applies at the time of the accident, but the bonding or insuring company:

   a. denies coverage; or

   b. is or becomes insolvent.

However, "**uninsured motor vehicle**" does not include any vehicle or equipment:

1. Owned by or furnished or available for the regular use of you or any **family member** unless there is no Liability Coverage available under Part A of this policy to respond for damages sustained by an **insured**.

2. Operated on rails or crawler treads.

3. Designed mainly for use off public roads while not on public roads.

4. While located for use as a residence or premises.

### EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any **insured**:

1. If that **insured** or the legal representative settles the **bodily injury** claim without our consent.

2. While **occupying your covered auto** when it is being used as a public or livery

conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle. This exclusion (**A.2.**) does not apply:

a. to a share-the-expense car pool; or

b. when **your covered auto** is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN. Section 43-1201(4).

3. While using any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**. This exclusion (**A.3.**) does not apply when **your covered auto** is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN. Section 43-1201(4).

4. While using a vehicle without the express or implied permission of the owner or other person having lawful possession. However, this exclusion does not apply to you or any **family member** using **your covered auto**.

B. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers compensation law; or

2. Disability benefits law.

C. We do not provide Uninsured Motorists Coverage for **punitive or exemplary damages**.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for "each person" for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one auto accident.

Subject to this limit for "each person", the limit of liability shown in the Declarations for "each accident" for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident.

This is the most we will pay regardless of the number of:

1. **Insureds**;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

B. If the Declarations indicate Combined Single Limit Coverage applies, paragraph (**A.**) above is replaced by the following:

The limit of liability shown in the Declarations for Uninsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one auto accident. This is the most we will pay regardless of the number of:

1. **Insureds**;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the auto accident.

We will apply the limit of liability to provide any separate **minimum limits** required by law for **bodily injury** liability. However, this provision will not change our total limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A** or Part **B** or any Underinsured Motorists Coverage provided by this policy.

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers compensation law; or

2. Disability benefits or occupational disease laws.

F. A vehicle and attached **trailer** are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached **trailer**.

**OTHER INSURANCE**

If there is other applicable insurance available under one or more policies or provisions of coverage that is

similar to the insurance provided under this Part of the policy:

1. Any insurance we provide with respect to a vehicle:

   a. you do not own, including any vehicle while used as a temporary substitute for **your covered auto**; or

   b. owned by you or any **family member** which is not insured for this coverage under this policy;

   shall be excess over any collectible insurance providing such coverage on a primary basis.

2. We will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits.

## ARBITRATION

A. If we and an **insured** do not agree:

   1. Whether that **insured** is legally entitled to recover damages; or

   2. As to the amount of damages which are recoverable by that **insured**;

from the owner or operator of an **uninsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

B. Each party will:

   1. Pay the expenses it incurs; and

   2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding.

## ADDITIONAL DUTY

A person seeking Uninsured Motorists Coverage must also promptly send us copies of the legal papers if a suit is brought.

## PART D — COVERAGE FOR DAMAGE TO YOUR AUTO

### INSURING AGREEMENT

A. We will pay for direct and accidental loss to **your covered auto** or any **non-owned auto**, including its equipment, any child safety seat in use in **your covered auto** or **non-owned auto**, minus any applicable deductible shown in the Declarations. We will pay for loss to **your covered auto** caused by:

   1. Other than **collision** only if the Declarations indicate that Comprehensive Coverage is provided for that auto.

   2. **Collision** only if the Declarations indicate that Collision Coverage is provided for that auto.

If there is a loss to a **non-owned auto**, we will provide the broadest coverage applicable to any vehicle shown in the Declarations.

### Deductible

Unless stated otherwise, the applicable deductible shown in the Declarations shall be applied to each accidental loss covered under this Part of the policy. However,

   a. if loss to more than one of **your covered autos** or a **non-owned auto**

results from the same loss, only the highest applicable deductible will apply;

   b. in the event of a **collision** with another vehicle insured by:

      (1) a Safeco insurance company; or

      (2) another affiliated company within the Liberty Mutual Agency Markets business unit of Liberty Mutual Group;

   no deductible will apply.

   This does not include a vehicle described as **your covered auto** or **non-owned auto**.

   c. no deductible will apply to **your covered auto** or a **non-owned auto** if the loss to **your covered auto** or a **non-owned auto** results from the same event as a loss covered under your Safeco Homeowners or Condominium and we issue a payment under your Homeowners or Condominium policy for the loss.

**B.** **"Collision"** means the upset of **your covered auto** or a **non-owned auto** or its impact with another vehicle or object.

**"Comprehensive"** means loss, other than **collision**, to **your covered auto** or a **non-owned auto**. Losses caused by the following are not **collision** losses but are **comprehensive** losses:

Loss caused by missiles or falling objects; fire; theft or larceny; explosion or earthquake; windstorm; hail, water or flood; malicious mischief or vandalism; riot or civil commotion; contact with a bird or animal; or breakage of glass.

If breakage of glass is caused by a **collision**, you may elect to have it considered a loss caused by **collision**.

**C.** **1.** **"Non-owned auto"** means:

   **a.** Any private passenger auto, pickup, van (other than a cargo van) or **trailer** with a Gross Vehicle Weight Rating of 12,000 pounds or less or any cargo van or moving van with a Gross Vehicle Weight Rating of 18,000 pounds or less not owned by or furnished or available for the regular use of you or any **family member** while in the custody of or being operated by you or any **family member**; or

   **b.** Any auto or **trailer** you do not own while used as a temporary substitute for **your covered auto** which is out of normal use because of its:

      **(1)** breakdown;

      **(2)** repair;

      **(3)** servicing;

      **(4)** loss; or

      **(5)** destruction.

   **2.** **"Non-owned auto"** does not include any vehicle which has been operated or rented by or in the possession of you or any **family member** for 30 or more consecutive days. This does not apply to a temporary substitute vehicle authorized by us.

**D.** **"Camper body"** means a body equipped as sleeping or living quarters which is designed to be mounted on a pickup.

**E.** **"Diminution in value"** means the actual or perceived loss in market or resale value which results from a direct and accidental loss.

**TRANSPORTATION EXPENSES**

**A.** Subject to the limitations described in paragraphs **B.** and **C.**, below, we will pay:

   **1.** Temporary transportation expenses incurred by you in the event of the total theft of **your covered auto** or a **non-owned auto**. We will pay for such expenses only if the Declarations indicate that Comprehensive Coverage is provided for that auto. We will pay only expenses incurred during the period:

      **a.** beginning 48 hours after the theft; and

      **b.** ending when **your covered auto** or the **non-owned auto** is returned to use or we pay for its loss.

   **2.** Indirect loss expenses for which you become legally responsible in the event of a loss to a **non-owned auto**. We will pay only expenses beginning when the **non-owned auto** is withdrawn from use for more than 24 hours. We will pay for indirect loss expenses if the loss is caused by:

      **a.** a **comprehensive** loss only if the Declarations indicate that Comprehensive Coverage is provided for any **your covered auto**.

      **b.** **collision** only if the Declarations indicate that Collision Coverage is provided for any **your covered auto**.

**B.** For the expenses described in paragraphs **A.1.** and **A.2.** we will pay the greater of the following, without application of a deductible:

   **1.** Up to $25 per day, to a maximum of $750; or

   **2.** The limit for Loss of Use, if any, shown in the Declarations.

**C.** Our payment for the expenses described in paragraphs **A.1.** and **A.2.** will be limited to that period of time reasonably required to repair or replace **your covered auto** or the **non-owned auto**.

**EXCLUSIONS**

We will not pay for:

   **1.** Loss to **your covered auto** or any **non-owned auto** which occurs while it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person

who is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle. This exclusion **(1.)** does not apply:

  **a.** to a share-the-expense car pool; or

  **b.** when **your covered auto** is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN. Section 43-1201(4).

**2.** Loss to **your covered auto** or any **non-owned auto** while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**. This exclusion **(2.)** does not apply when **your covered auto** is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN. Section 43-1201(4).

**3.** Damage or loss due and confined to:

  **a.** wear and tear;

  **b.** freezing;

  **c.** mechanical or electrical breakdown or failure; or

  **d.** road damage to tires.

This exclusion **(3.)** does not apply if the damage results from the total theft of **your covered auto** or any **non-owned auto**.

**4.** Damage or loss arising out of neglect. Neglect means your failure to adequately maintain **your covered auto** or **non-owned auto** after the loss.

With respect to water under Comprehensive Coverage, there is no coverage for:

  **a.** moisture, condensation, humidity, or vapor;

  **b.** water intrusion around or through panels, surfaces and seals; or

  **c.** water that collects in spaces or ventilation systems; or

  **d.** **fungi**, dry rot or bacteria;

resulting from neglect.

**5.** Loss due to or as a consequence of:

  **a.** discharge of any nuclear weapon (even if accidental);

  **b.** war (declared or undeclared);

  **c.** civil war;

  **d.** insurrection; or

  **e.** rebellion or revolution.

**6.** Loss from or as a consequence of the following, whether controlled or uncontrolled or however caused:

  **a.** nuclear reaction;

  **b.** radiation; or

  **c.** radioactive contamination.

**7.** Loss to:

  **a.** any electronic equipment designed for the production or reproduction of sound, pictures, audio, visual or data or that receives or transmits sound, pictures or data signals.

  **b.** this exclusion **(7.)** does not apply to:

    **(1)** equipment designed for the reproduction of sound or transmission of sound, pictures, audio, visual or data signals and accessories used with such equipment, provided:

      **(a)** the electronic equipment is permanently installed by the original vehicle manufacturer or manufacturer's dealership in **your covered auto** or any **non-owned auto**; or

      **(b)** the electronic equipment is:

        **i.** removable from a housing unit which is permanently installed by the original vehicle manufacturer or manufacturer's dealership in the auto;

        **ii.** designed to be solely operated by use of the power from the auto's electrical system; and

        **iii.** in or upon **your covered auto** or any **non-owned auto**;

      at the time of loss.

However, we will pay only up to a total of $1,000 or the actual cash value of **your covered auto** or any **non-owned auto**, whichever is less, for all such equipment that is not installed by the original vehicle manufacturer or manufacturer's dealership.

(2) any other electronic equipment that is:

    (a) necessary for the normal operation of the auto or the monitoring of the auto's operating systems;

    (b) an integral part of the same unit housing any electronic equipment described in **7.a.** and permanently installed by the original vehicle manufacturer or manufacturer's dealership in **your covered auto** or any **non-owned auto.**

**8.** Loss to:

    **a.** tapes, records, discs, or other media used with such equipment described in exclusion **(7.)**; or

    **b.** any other accessories, not permanently installed used with such equipment described in exclusion **(7.).**

**9.** Loss to **your covered auto** or any **non-owned auto** due to destruction or confiscation by governmental or civil authorities because you or any **family member**:

    **a.** engaged in illegal activities; or

    **b.** failed to comply with Environmental Protection Agency or Department of Transportation standards.

This exclusion **(9.)** does not apply to the interests of Loss Payees in **your covered auto**.

**10.** Loss to a **camper body**, motorhome or **trailer** you own which is not shown in the Declarations. This exclusion **(10.)** does not apply to a **camper body**, motorhome or **trailer** you:

    **a.** acquire during the policy period; and

    **b.** ask us to insure within 30 days after you become the owner.

**11.** Loss to any **non-owned auto** when used by you or any **family member** without the express or implied permission of the owner or other person having lawful possession.

**12.** Loss to equipment, whether operational or not, whose design may be used for the detection or location of law enforcement equipment.

**13.** Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in the **business** of:

    **a.** selling;

    **b.** repairing;

    **c.** servicing;

    **d.** storing; or

    **e.** parking;

vehicles designed for use on public highways. This includes road testing and delivery.

**14.** Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in any **business** not described in exclusion **(2.)** and **(13.).** This exclusion **(14.)** does not apply to the maintenance or use by you or any **family member** of a **non-owned auto** which is a private passenger auto or **trailer**.

**15.** Loss to **your covered auto** or any **non-owned auto** while it is:

    **a.** operating on a surface designed or used for racing. This does not apply to an organized and controlled event that is not a speed, performance, stunt or demolition event;

    **b.** participating in a high performance driving or racing instruction course or school; or

    **c.** preparing for, practicing for, used in, or competing in any prearranged or organized:

        (1) race activity; or

        (2) speed, performance, stunt, or demolition contest or exhibition.

**16.** Loss to, or loss of use of, a **non-owned auto** rented by:

    **a.** you; or

    **b.** any **family member**;

if a rental vehicle company is precluded from recovering such loss or loss of use, from you or that **family member**, pursuant to the provisions of any applicable rental agreement or state law.

**17.** Loss to **your covered auto** or any **non-owned auto**, arising out of the actual, alleged or threatened presence, growth, proliferation or spread of **fungi**, dry rot or bacteria.

**18.** Loss to **your covered auto**, **non-owned auto**, or **trailer**, for **diminution in value**.

19. Loss in excess of $1,000 per claim or the actual cash value of **your covered auto** or any **non-owned auto**, whichever is less, for any furnishings or equipment that were not installed by the original vehicle manufacturer or manufacturer's dealership which mechanically or structurally changes your vehicle and results in increase in performance or change in appearance, including but not limited to:

   a. custom murals, paintings or other decals or graphics;

   b. custom wheels, tachometers, pressure and temperature gauges;

   c. modified or custom engines and fuel systems, light bars, racing slicks and/or oversized tires, roll bars and lift kits, winches, utility boxes, and tool boxes; or

   d. non-standard paint.

This exclusion does not apply to equipment installed to make a vehicle handicap accessible.

20. Loss arising out of the use of **your covered auto** while leased or rented to others.

21. Loss to **your covered auto** or a **non-owned auto** caused by an intentional act by you or a **family member**, or at the direction of you or a **family member**.

The exclusion shall not deny an **insured's** otherwise covered property loss if the property loss is caused by an act of domestic violence by another **insured** under the policy and the **insured** who claims the property loss cooperates in any investigation relating to the loss and did not cooperate in or contribute to the loss.

## LIMIT OF LIABILITY

A. At our option, our limit of liability for loss will be the lowest of:

1. The actual cash value of the stolen or damaged property;

2.  a. The amount necessary to repair or replace the property;

   b. Determination of the cost of repair or replacement will be based upon one of the following:

     (1) the cost of repair or replacement agreed upon by you and us;

     (2) a competitive bid approved by us; or

     (3) an estimate written based upon the prevailing competitive price. You agree with us that we may include in the estimate parts furnished by the original vehicle manufacturer or parts from other sources including non-original equipment manufacturers. The prevailing competitive price means prices charged by a majority of the repair market in the area where the vehicle is to be repaired as determined by us; or

3. The limit of liability shown in the Declarations.

However, the most we will pay for loss to any **non-owned auto**, which is a **trailer**, is $1,500.

B. An adjustment for depreciation and physical condition may be made based upon the physical condition and wear and tear of the property or damaged part of the property at the time of the loss. This adjustment for physical condition includes but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges and paint condition. When replacing parts normally subject to repair or replacement during the useful life of the vehicle, we will not pay for the amount of any betterment.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

1. You; or

2. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a **non-owned auto** shall be

excess over any other collectible source of recovery including, but not limited to:

1. Any coverage provided by the owner of the **non-owned auto**;

2. Any other applicable physical damage insurance;

3. Any other source of recovery applicable to the loss.

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

---

## LIMITED MEXICO COVERAGE

### WARNING

**AUTO ACCIDENTS IN MEXICO ARE SUBJECT TO THE LAWS OF MEXICO, NOT THE LAWS OF THE UNITED STATES. UNDER MEXICAN LAW, AUTO ACCIDENTS ARE CONSIDERED A CRIMINAL OFFENSE AS WELL AS A CIVIL MATTER.**

**THE COVERAGE WE PROVIDE UNDER THIS COVERAGE DOES NOT MEET MEXICAN AUTO INSURANCE REQUIREMENTS.**

**YOU ARE REQUIRED TO PURCHASE LIABILITY INSURANCE THROUGH A LICENSED MEXICAN INSURANCE COMPANY FOR THIS COVERAGE TO APPLY.**

### INSURING AGREEMENT

A. All Liability, Medical Payments, Uninsured Motorists Coverage, Underinsured Motorists Coverage and Coverage For Damage to Your Auto afforded to an **insured**, as defined under the policy coverages, is extended to accidents occurring in Mexico within 100 miles of the United States border. This extension of coverage only applies while an **insured** seeking Limited Mexico Coverage is in Mexico on a trip of 10 days or less.

Our duty to defend under the Liability Coverage of this policy will apply only if:

1. The original suit for damages is brought in the United States; and

2. The suit does not involve a Mexican citizen or resident.

B. **"Your covered auto"** as used under this coverage means:

1. Any vehicle shown in the Declarations.

2. Any of the following types of vehicles on the date you become the owner:

   a. a private passenger auto;

   b. a pickup or van that:

      (1) has a gross vehicle weight of less than 10,000 lbs.; and

      (2) is not used for the delivery or transportation of goods and materials unless such use is:

         (a) incidental to your business of installing, maintaining or repairing furnishings or equipment; or

         (b) for farming or ranching.

   c. a motorhome or **trailer**.

   This provision applies only if:

   a. you acquire the vehicle during the policy period;

   b. you ask us to insure the vehicle within 30 days after you become the owner; and

   c. the vehicle is principally garaged and used in the United States.

### EXCLUSIONS

The following exclusions are in addition to any exclusions found under the other Parts of the policy.

A. We do not provide coverage to any **insured**:

1. If liability insurance from a licensed Mexican Insurance Company is not in force at the time of loss;

2. While **occupying** an auto other than **your covered auto**; or

3. Who is a citizen or resident of Mexico. This exclusion **(A.3.)** does not apply to loss payable under Coverage for Damage to Your Auto if the accident arises out of the operation of **your covered auto** by a Mexican citizen or resident.

**B.** We will not pay under Coverage for Damage to Your Auto for auto repairs made in Mexico unless **your covered auto** cannot be driven in its damaged condition.

**OTHER INSURANCE**

The insurance provided under this coverage is excess over any other collectible insurance.

**LOSSES PAYABLE UNDER COVERAGE FOR DAMAGE TO YOUR AUTO**

We will pay losses under Coverage for Damage to Your Auto in the United States, not in Mexico. **If your covered auto** must be repaired in Mexico in order to be driven, we will not pay more than the actual cash value of such loss at the nearest United States point where the repairs can be made.

## PART E — DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**A.** We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

**B.** A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require:

    a. to physical examinations by physicians we select. We will pay for these exams.

    b. to examination under oath and sub-scribe the same. We may examine any **insured** separately and apart from the presence of any other **insured**.

4. Authorize us to obtain:

    a. medical reports; and

    b. other pertinent records.

5. Submit a proof of loss, under oath if requested, when required by us.

**C.** A person seeking Uninsured/Underinsured Motorists Coverage must also:

1. Report the accident to the police or other civil authority within twenty-four (24) hours or as soon as practicable if a hit-and-run driver is involved.

2. Promptly send us copies of the legal papers if a suit is brought.

**D.** A person seeking Coverage for Damage to Your Auto must also:

1. Take reasonable steps after loss to protect **your covered auto** or any **non-owned auto** and its equipment from further loss. We will pay reasonable expenses incurred to do this.

2. Promptly notify the police if **your covered auto** or any **non-owned auto** is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

## PART F — GENERAL PROVISIONS

**POLICY PERIOD AND TERRITORY**

**A.** This policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

**B.** The policy period is the period stated in the Declarations. The policy may be renewed for successive policy periods if the required premium is paid. The premium will be computed at our then current rate for coverage then offered.

**C.** The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

## BANKRUPTCY

Bankruptcy or insolvency of the **insured** shall not relieve us of any obligations under this policy.

## CHANGES

A. This policy, your Declarations page and endorsements issued by us to this policy contain all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. The premium for your policy is based on information we have received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete and you will notify us if it changes. If this information is incorrect, incomplete, or changes, we will adjust your premium during the policy term or take other appropriate action based upon the corrected, completed or changed information. Changes during the policy term that will result in a premium increase or decrease during the policy term include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles.

2. Operators using insured vehicles, including newly licensed **family member** drivers and any household members that have licenses.

3. The location where your vehicle is principally garaged.

4. Customized equipment or parts.

You also agree to disclose all licensed drivers residing in your household.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph **(C.)** does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

D. Additional or return premium of $3.00 or less resulting from policy changes will be waived.

## PAYMENT OF PREMIUM

If your initial premium payment is by check, draft or any remittance other than cash, coverage under this policy is conditioned upon the check, draft or remittance being honored upon presentment to the bank or other financial institution. If the check, draft or remittance is not honored upon presentment, this policy may, at our option, be deemed void from its inception. This means that we will not be liable under this policy for any claims or damages which would otherwise be covered if the check, draft, or remittance had been honored upon presentment.

## FRAUD

A. This policy was issued in reliance upon the information provided on your application. We may void this policy because of misrepresentations, omissions, concealment of facts and incorrect statements if:

1. Fraudulent,

2. Material either to the acceptance of the risk, or to the hazard assumed by us, and

3. We in good faith would either not have issued a policy in as large of an amount, or would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known to us as required either by the application for the policy or otherwise.

We will only void this policy in excess of the **minimum limits** specified by the Arizona Financial Responsibility Law for bodily injury or property damage liability.

B. We may deny coverage for an accident or loss if you or an **insured** have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim. We will not void this policy or deny coverage for **bodily injury** or **property damage** if you or an **insured** is legally responsible for such damages because of an auto accident.

## LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part **A**, no legal action may be brought against us until:

1. We agree in writing that the **insured** has a legal obligation to pay damages; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or organization has any right under this policy to bring us into any action to determine the legal liability of an **insured**.

## OUR RIGHT TO RECOVER PAYMENT

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another person, entity or organization we shall be subrogated to that right. That person shall:

1. Do whatever is necessary to enable us to exercise our rights; and

2. Do nothing after loss to prejudice them.

However, our rights in this paragraph (A.) do not apply

    a. under Part D, against any person using **your covered auto** with your express or implied permission or other person having lawful possession; and

    b. to Part B — Medical Payments Coverage if payment is $5,000 or less.

B. If we make a payment under this policy and the Person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

This provision (B.) does not apply to Uninsured Motorists Coverage and Medical Payments Coverage.

C. With respect to Medical Payments Coverage, if we make a payment under this coverage and the person to or for whom payment is made recovers damages from another we:

1. Shall be entitled to the proceeds of the recovery; and

2. May have a lien against such recovery;

to the extent of our payment in excess of $5,000. Notice of the lien shall be given in writing to:

1. A court having jurisdiction;

2. The **insured**;

3. Each person, firm and corporation that the **insured** or the **insured's** legal representative alleges are liable for damages arising from the accident; and

4. That person's, firm's and corporation's insurer.

D. With respect to Uninsured Motorists Coverage, if we make a payment under Uninsured Motorists Coverage and the person to or for whom payment was made has a right to recover damages from the owner or operator of an

uninsured motor vehicle we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

## TERMINATION

A. **Cancellation.** This policy may be canceled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

    a. returning this policy to us; or

    b. giving us advance written or verbal notice of the date cancellation is to take effect. We may waive the requirement that the notice be in writing by confirming the date and time of cancellation to you in writing.

2. We may cancel by mailing notice to you at the address shown in the policy. We cannot cancel solely because of location of the residence, age, race, color, religion, sex, national origin or ancestry of anyone who is an **insured**. Notice shall be mailed:

    a. at least 8 days after the premium due date if cancellation is for nonpayment of premium. During this 7 day grace period for the payment of any premium due, this policy shall continue in full force subject to the Termination provisions of the policy. Cancellation is to take effect as of the date of the mailing of the notice.

    b. at least 10 days prior to the date cancellation is to take effect in all other cases. In this case, notice will be mailed by certified mail, United States Post Office certificate of mailing or by first class mail using Intelligent Mail barcode or another similar tracking method used or approved by the United States Postal Service.

3. After this policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

    a. for nonpayment of premium for this policy or any installment thereof;

    b. if the insurance was obtained through fraudulent misrepresentation; or

    c. if you, or any other driver who lives with you and customarily uses **your covered auto** or any other driver who

regularly and frequently uses **your covered auto**:

**(1)** has had their driver's license suspended or revoked during the policy period;

**(2)** becomes permanently disabled, either physically or mentally, and that individual does not produce a certificate from a physician or a registered nurse practitioner testifying to that individual's ability to operate a **motor vehicle**; or

**(3)** is or has been convicted during the 36 months immediately preceding the effective date of the policy or during the policy period for:

  **(a)** criminal negligence resulting in death, homicide or assault, and arising out of the operation of a **motor vehicle**;

  **(b)** operating a **motor vehicle** while in an intoxicated condition or while under the influence of drugs;

  **(c)** leaving the scene of an accident;

  **(d)** making false statements in an application for a driver's license; or

  **(e)** reckless driving;

unless you agree in writing to exclude as **insured** such person (not including the named insured or spouse, if the spouse is a named insured under the policy) by name when operating a **motor vehicle** and also agree to exclude coverage to yourself for any negligence which may be imputed by law to you arising out of the maintenance, operation or use of a **motor vehicle** by such excluded person.

**(4)** Uses **your covered auto** while logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle, unless you either:

  **(a)** have procured an endorsement to this policy that expressly provides such coverage; or

  **(b)** are covered by a motor vehicle liability insurance policy issued by another insurer expressly providing such coverage.

**d.** if **your covered auto** is used regularly and frequently for commercial purposes by:

  **(1)** you;

  **(2)** any other driver who lives with you and who customarily uses **your covered auto**; or

  **(3)** any driver who regularly and frequently uses **your covered auto**.

**B. NONRENEWAL**

If we decide not to renew or continue this policy we will mail notice to the named insured shown in the Declarations at the address shown in this policy. Notice will be mailed at least 45 days before the end of the policy period except for nonpayment of premium as provided in the Offer To Renew provision.

Notice will be mailed by certified mail, United States Post Office certificate of mailing or by first-class mail using Intelligent Mail barcode or another similar tracking method used or approved by the United States Postal Service except if the reason we decide not to renew or continue this policy is that the named insured shown in your Policy Declarations fails to pay the premium for this policy or any installment thereof.

**C. OFFER TO RENEW**

If we offer to renew or continue this policy and you or your representative do not pay the required renewal or continuation premium within the 7 days after the due date, thereby not accepting our offer, we may terminate this policy by mailing notice of termination to the named insured at the address shown in your Policy Declarations on or after the eighth day following the due date.

Termination is to take effect on the earliest of the following dates:

**1.** The date of the mailing of the notice; or

**2.** The effective date of any other insurance you have obtained on **your covered auto**.

However, if you or your representative notifies us in writing that you:

**1.** Have obtained other insurance on **your covered auto**; or

2. Do not wish to renew or continue this policy;

the above provision does not apply and any insurance provided by this policy will terminate in accordance with the Automatic Termination provision below.

## D. AUTOMATIC TERMINATION

If you notify us in writing that you do not wish to renew or continue, any insurance provided by this policy will automatically terminate at the end of the current policy period. We will mail you a notice of termination.

## E. OTHER TERMINATION PROVISIONS.

1. If this policy is canceled, you may be entitled to a premium refund. If so, we will send you the refund. If we cancel, we will refund to you the pro rata unearned premium. If you cancel, we will refund to you 90% of the pro rata unearned premium.

2. The effective date of cancellation is stated in the notices.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse or **domestic partner** if resident in the same household at the time of death. Coverage applies to the spouse or **domestic partner** as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto**.

## TWO OR MORE AUTOS INSURED; TWO OR MORE AUTO POLICIES

If this policy insures two or more autos or if any other auto insurance policy issued to you by us applies to the same accident, the maximum limit of our liability shall not exceed the highest limit applicable to any one auto. In no event shall the limit of liability of two or more motor vehicles or two or more policies be added together, combined, or stacked to determine the limit of insurance coverage available to you or any **insured**.

## LOSS PAYABLE CLAUSE

As to the interest of the loss payee, this policy will remain in effect from the inception date and until ten days after proof of mailing that the cancellation notice has been mailed to the loss payee. When we pay the loss payee we shall, to the extent of payment, have the loss payee's rights of recovery.

Where fraud, misrepresentation, material omission, or intentional damage has been committed by or at the direction of any **insured**, or where the loss is otherwise not covered under the terms of the policy, the loss payee or lienholder's interest will not be protected.

## STORAGE COSTS

If you give us your consent, we may move the damaged property, at our expense, to reduce storage costs during the claims process. If you do not give us your consent, we will pay only the storage costs which would have resulted if we had moved the damaged property.

## NAMED DRIVER EXCLUSION

If there is an excluded driver under this policy, then we will not provide coverage for any claim arising from an accident or loss involving a **motor vehicle** being operated by that excluded person. This includes any claim for damages made against you or any **family member** or any other person or organization that is vicariously liable for an accident arising out of the operation of a **motor vehicle** by the excluded driver.

This provision does not apply to Uninsured Motorists Coverage and Underinsured Motorists Coverage.

## SPECIAL STATE PROVISION

**Warning** — Unless you have automobile insurance written by a Mexican insurance company, you may spend many hours or days in jail, if you have an accident in Mexico. Insurance coverage should be secured from a company licensed under the laws of Mexico to write such insurance in order to avoid complications and some other penalties possible under the laws of Mexico, including the possible impoundment of your vehicle.

## ADDITIONAL COVERAGES

**AGREEMENT: WE WILL PROVIDE THE INSURANCE DESCRIBED IN EACH OF THE FOLLOWING ADDITIONAL COVERAGES ONLY IF INDICATED IN THE DECLARATIONS.**

### UNDERINSURED MOTORISTS COVERAGE

**INSURING AGREEMENT**

A. We will pay damages which an **insured** is legally entitled to recover from the owner or operator of an **underinsured motor vehicle** because of **bodily injury**:

   1. Sustained by that **insured**; and

   2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle**.

We will pay under this coverage only if a tentative settlement has been made between an **insured** and the insurer of the **underinsured motor vehicle** and we:

   1. Have been given prompt written notice of such tentative settlement; and

   2. Advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

B. "Insured" as used in this coverage means:

   1. You or any **family member**.

   2. Any Rated Driver shown on the Declarations other than you or a **family member**.

   3. Any other person **occupying your covered auto** with your express or implied permission.

   4. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in **1.** or **2.** above.

C. "Underinsured motor vehicle" means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the amount paid for **bodily injury** under that bond or policy to an **insured** is not enough to pay the full amount the **insured** is legally entitled to recover as damages.

However, **"underinsured motor vehicle"** does not include any vehicle or equipment:

   1. To which a bodily injury liability bond or policy applies at the time of the accident but its limit for bodily injury liability is less than the **minimum limit** for bodily injury liability

specified by the financial responsibility law of Arizona.

   2. Operated on rails or crawler treads.

   3. Designed mainly for use off public roads while not upon public roads.

   4. While located for use as a residence or premises.

   5. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

     a. denies coverage; or

     b. is or becomes insolvent.

**EXCLUSIONS**

A. We do not provide Underinsured Motorists Coverage for **bodily injury** sustained by any **insured**:

   1. While **occupying your covered auto** when it is being used as a public or livery conveyance. This includes but is not limited to any period of time while it is being used by any person who is logged into a **transportation network platform** as a driver, whether or not a passenger is **occupying** the vehicle. This exclusion **(A.1.)** does not apply:

     a. to a share-the-expense car pool; or

     b. when **your covered auto** is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN. Section 43-1201(4).

   2. While using any vehicle while employed in the pickup or delivery of newspapers or magazines, food or any products for the purpose of compensation. This exclusion does not apply to delivery that is incidental to an **insured's business**. This exclusion **(A.2.)** does not apply when **your covered auto** is being used in the course of volunteer work for a tax-exempt organization as described in ARIZ. REV. STAT. ANN. Section 43-1201(4).

   3. While using a vehicle without the express or implied permission of the owner or other person having lawful possession. However, this exclusion does not apply to you or any **family member** using **your covered auto**.

**B.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

    **1.** Workers compensation law; or

    **2.** Disability benefits law.

**C.** We do not provide Underinsured Motorists Coverage for **punitive or exemplary damages.**

## LIMIT OF LIABILITY

**A.** The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care and loss of services (including loss of consortium and wrongful death), arising out of **bodily injury** sustained by any one person in any one accident.

Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for **bodily injury** resulting from any one accident.

This is the most we will pay regardless of the number of:

    **1.** **Insureds;**

    **2.** Claims made;

    **3.** Vehicles or premiums shown in the Declarations; or

    **4.** Vehicles involved in the accident.

**B.** No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and Part **A** or Part **C** of this policy.

**C.** We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or organizations who may be legally responsible.

**D.** We will reduce the **insured's** total damages by any amount available to that **insured** under any bodily injury liability bonds or policies applicable to the **underinsured motor vehicle,** that such **insured** did not recover as a result of a settlement between that **insured** and the insurer of an **underinsured motor vehicle.** However, any reduction of the **insured's** total damages will not reduce the limit of liability for this coverage.

**E.** A vehicle and attached **trailer** are considered one vehicle. Therefore the limits of liability will not be increased for an accident involving a vehicle which has an attached **trailer.**

**F.** If Combined Single Limit Underinsured Motorists Coverage applies Paragraph **A.** is replaced by the following:

The limit of liability shown in the Declarations for Underinsured Motorists Coverage is our maximum limit of liability for all damages because of **bodily injury** resulting from any one accident. This is the most we will pay regardless of the number of:

    **1.** **Insureds;**

    **2.** Claims made;

    **3.** Vehicles or premiums shown in the Declarations; or

    **4.** Vehicles involved in the accident.

## OTHER INSURANCE

If there is other applicable similar insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a vehicle you do not own or owned by you or any **family member** which is not insured for this coverage under this policy shall be excess over any other collectible insurance.

## ARBITRATION

**A.** If we and an **insured** do not agree:

    **1.** Whether that **insured** is legally entitled to recover damages; or

    **2.** As to the amount of damages which are recoverable by that **insured;**

from the owner or operator of an **underinsured motor vehicle,** then the matter may be arbitrated. However, disputes concerning coverage may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

**B.** Each party will:

    **1.** Pay the expenses it incurs; and

    **2.** Bear the expenses of the third arbitrator equally.

**C.** Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by two of the arbitrators will be binding as to:

    **1.** Whether the **insured** is legally entitled to recover damages; and

2. The amount of damages. This applies only if the amount does not exceed the **minimum limit** for bodily injury liability specified by the financial responsibility law of Arizona. If the amount exceeds that limit, either party may demand the right to a trial. This demand must be made within 60 days of the arbitrators' decision. If this demand is not made, the amount of damages agreed to by the arbitrators will be binding.

## ADDITIONAL DUTIES

A person seeking Underinsured Motorists Coverage under this policy must also promptly:

1. Send us copies of the legal papers if a suit is brought; and

2. Notify us in writing of a tentative settlement between the **insured** and the insurer of the **underinsured motor vehicle** and allow us 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such underinsured motor vehicle.

## ROADSIDE ASSISTANCE COVERAGE
CALL 1-877-ROAD101 (1-877-762-3101)

**"Your covered auto"** as used in this endorsement means a private passenger vehicle, motorhome or trailer owned by you and for which a specific premium is shown on the Declarations for this coverage.

The following coverages apply to each vehicle for which this coverage is shown on the Policy Declarations:

1. Each time **your covered auto** or any **non-owned auto** is disabled due to mechanical or electrical breakdown we will pay reasonable and necessary expenses for the use of an **authorized service provider** to tow or flatbed **your covered auto** or **non-owned auto** up to 15 miles or to the nearest qualified place where necessary repairs can be made during regular **business** hours.

2. Each time **your covered auto** or any **non-owned auto** is disabled requiring:

    a. towing to dislodge the vehicle from its place of disablement within 100 feet of a public street or highway; or

    b. labor, including change of tire, at the place of its breakdown; or

    c. delivery of fuel, oil, water or other fluids (we do not pay the costs of these items); or

    d. key lock-out services;

    we will cover up to one (1) hour of labor for the use of an **authorized service provider** for service at the place of disablement.

3. For policies with a 6 month policy term, coverage is limited to no more than two occurrences per vehicle plus an additional two occurrences per policy in a 6 month policy period for both coverages **1.** and **2.** above.

4. For policies with an annual policy term, coverage is limited to no more than four occurrences per vehicle plus an additional four occurrences per policy in a 12 month policy period for both coverages **1.** and **2.** above.

**Authorized service provider** means a service provider contracted by us providing, at no charge to you, roadside assistance as described and limited above.

When service is provided by other than an **authorized service provider**, we will reimburse you only for reasonable charges as determined by us.

No deductible applies to this coverage.

## LOSS OF USE COVERAGE

The provisions and exclusions that apply to Part D — Coverage for Damage to Your Auto also apply to this coverage except as changed below:

When there is a loss to any vehicle described in the Declarations for which a specific premium charge indicates that Loss of Use Coverage is afforded, we will reimburse you for expenses you incur to rent a substitute vehicle.

This coverage applies only if:

1. The vehicle is withdrawn from use for more than 24 hours;

2. The loss is caused by **collision**, or is covered by the Comprehensive Coverage of this policy; and

3. The loss exceeds the appropriate **collision** or **comprehensive** deductible applying to the vehicle.

However, this coverage does not apply to losses caused by **collision** if Collision Coverage does not apply to the vehicle.

Our payment will be limited to that period of time reasonably required to repair or replace the vehicle. We will pay up to the amount per day and the maximum shown for Loss of Use in the Declarations.

No deductible applies to this coverage.

## FULL SAFETY GLASS COVERAGE

The provision and exclusions that apply to Part D — Coverage for Damage to Your Auto also apply to this coverage except as modified below.

The following is added to Part D, Insuring Agreement:

We will pay under Comprehensive Coverage for the cost of repairing or replacing damaged **safety equipment** on **your covered auto** without a deductible. We will pay only if:

1. The Declarations indicates that Comprehensive Coverage applies; and

2. A specific premium charge for Full Safety Glass Coverage is shown in the Declarations for **your covered auto**.

### Additional Definition

**"Safety equipment"**, as used in this coverage means the:

1. Glass used in the windshield, doors and windows of **your covered auto**; and

2. Glass, plastic or other material used in the lights of **your covered auto**.